## UNITED STATES *v.* NOELKE.

*(Circuit Court, S. D. New York.* March 30, 1880.)

INDICTMENT—REV. ST. § 3894—MAILING A LETTER CONCERNING A LOT-
TERY—WRITING DESCRIBED AS A "LETTER AND CIRCULAR."—A writ-
ing is not improperly described as a "Letter and Circular," in an
indictment under section 3894 of the Revised Statutes, providing that
"no letter or circular concerning lotteries * * * shall be carried in
the mail."

SAME—UNNECESSARY ALLEGATION—"CONCERNING A LOTTERY OFFERING
PRIZES."—It is not necessary to allege that the writing was one "con-
cerning a lottery offering prizes."

SAME—INFORMAL AVERMENT—VERDICT—ARREST OF JUDGMENT.—The
informal averment of facts necessary to show the illegal quality of the
writing is cured by verdict, and will not sustain a motion in arrest of
judgment.

SAME — UNNECESSARY AVERMENT — LOTTERY IN THE SENSE CONTEM-
PLATED BY THE STATUTE.—It is not necessary to allege facts showing
that the writing set forth concerned a lottery, *"in the sense contemplated
by the statute,"* when it clearly appears upon the face of such writing
that it was such a letter as was within the prohibition of the statute.

SAME—CIRCULAR—ALLEGATIONS IN HÆC VERBA.—A circular alleged to
have been mailed in violation of the statute should be set forth *in hæc
verba,* and the omission is not cured by verdict.

TRIAL—JUROR—"PREJUDICE AGAINST THE LOTTERY BUSINESS."—A juror
is not rendered incompetent, upon the trial of such indictment, by the
fact that he has a prejudice against the lottery business or those who
are engaged in it, or that he is disposed in his mind to put an end to
the traffic in lottery tickets, or that he is in favor of active measures
for the suppression of such business.

EVIDENCE—PAPERS ENCLOSED WITH LETTER—RES GESTÆ.—Papers en-
closed in the same envelope with the writing set forth in the indict-
ment, are admissible in evidence as part of the *res gestæ.*

CIRCUMSTANTIAL EVIDENCE—PROOF OF MOTIVE AND OPPORTUNITY TO
COMMIT THE OFFENCE.—Circumstantial evidence is competent which
tends to show that the defendant had both motive and opportunity to
mail the writing in violation of the statute.

JUDICIAL DISCRETION—RE-OPENING CASE—PROOF OF LOTTERY.—It was
within the discretion of the judge who presided at the trial to permit
the case to be re-opened, in order to permit the prosecution to prove
the existence of the lottery, concerning which the papers in question
were made.

STATUTE INCORPORATING LOTTERY—PUBLIC STATUTE—PROOF—STATUTE BOOK.—The act of the state of Louisiana, (Laws 1868, pp. 24–26,) entitled "An act to increase the revenues of the state, and to authorize the incorporation and establishment of the Louisiana State Lottery Company, and to repeal certain acts now in force," is a public act, and can be proved by the introduction in evidence of the statute book containing it.

EVIDENCE—PROOF OF INCORPORATION UNDER STATUTE.—It was not neccessary for the government to prove that the lottery was organized under the Louisiana statute, or that the parties who issued certain lottery tickets enclosed in the same envelope with the letter, purporting to be issued by the Louisiana State Lottery, were a corporation, as they purported to be.

SAME—PROOF OF LOTTERY.—The evidence of the Louisiana statute, and of the sale of the lottery tickets contained in the mailed envelope, were sufficient to establish the existence of the lottery, in the absence of any evidence to the contrary.

SAME—PROOF THAT LETTER RELATED TO A LOTTERY.—The surrounding circumstances, and the occupation of the defendant, were admissible in evidence in order to prove that the letter and circular related to a lottery.

SAME—PROOF THAT DEFENDANT UNLAWFULLY MAILED THE LETTER.— Where it was undisputed that the defendant was engaged in the lottery business, evidence that defendant received an order for two lottery tickets such as were subsequently mailed with the letter; that the name used in the address of the letter was the same as that signed to the order; that the tickets bore his stamp, and that the letter enclosed his business card, would justify the conclusion that the defendant deposited the letter in the post-office for mailing.

SAME—POST-OFFICE STAMP—PROOF THAT LETTER WAS MAILED.—The post-office stamp upon the envelope is *prima facie* proof that the letter was mailed, although it be shown that, in aid of justice, postmasters sometimes furnish empty envelopes bearing the post-office stamp, where the same have never in fact been through the mail.

*B. B. Foster*, for the defendant.

*S. Tenny*, Assistant District Attorney, for the United States.

CHOATE, J. The defendant was indicted under Rev. St. § 3894, which provides as follows: "No letter or circular concerning lotteries, so-called gift concerts, or other similar enterprises, offering prizes, or concerning schemes devised and intended to deceive and defraud the public for the purpose of obtaining money under false pretences, shall be carried in the mail. Any person who shall knowingly deposit or send anything to be conveyed by mail, in violation of this

section, shall be punishable by a fine of not more than $500 nor less than $100, with costs of prosecution."

The indictment contained two counts. The first count charged that the defendant "did unlawfully and knowingly deposit in the mail of the United States, and send to be conveyed by the said mail, a certain letter and circular concerning a lottery, which said letter and circular was then and there of the tenor and in the words and figures following, that is to say:

"'New York, November 7, 1879.

"'*Chas. D. J. Noelke, Banker and Broker, 238 Grand street, between Christie and Bowery*:

"'Dear Sir—Yours of the 5th inst., enclosing $2, received. Enclosed please find 2 ½ La. tickets, as per your order.

"'Very respectfully,

"'Chas. D. J. Noelke.

"'All prizes payable in full on presentation of ticket.

"'Official copy of drawings mailed as soon as received.'"

—Which said letter and circular was then and there enclosed in an envelope and addressed as follows, that is to say:

"M. Many,
    "Care of P. Howell, Esq.,
        "Trenton, New Jersey,
            "Mercer Co."

The second count charged that the defendant "did unlawfully and knowingly deposit in the mail of the United States, and send, to be conveyed by said mail, a certain circular concerning a lottery, which said circular was then and there enclosed in an envelope, which said envelope was addressed as follows:

"'M. Many,
    "'Care of P. Howell, Esq.,
        "'Trenton, New Jersey,
            "'Mercer Co.'

—And which said circular purported to be an announcement of the one hundred and fourteenth grand monthly distribu-

tion of the Louisiana State Lottery, to take place at New Orleans, Tuesday, November 11, 1879, describing the list of prizes, the plan of the lottery, a list of capital prizes, and a statement of their authority for, and method of, doing business."

The defendant pleaded "not guilty," and after trial and verdict of "guilty" on both counts, he now moves in arrest of judgment, and for a new trial upon exceptions.

1. The first objection taken to the first count is that the writing set out in that count is improperly described as a "letter and circular:" It is insisted that the statute, in proscribing a letter *or* circular, recognizes the distinction between the two things; that by a circular is intended a written or printed communication, general, and not personal, in its character, and that by a letter is intended a communication personal and individual in character, and not general; that if the paper set forth is a letter, then it is not and cannot be a circular, within the meaning of the statute, and if it is a circular, then it cannot be a letter. We think, however, that the same paper may be both a letter and a circular. No doubt there may be many circulars that are not letters, but a circular which is in the form of a letter may be well described as a letter and a circular, and there is no reason for excluding such a circular from the operation of the statute. There is nothing on the face of the paper set forth in the first count indicating that it was not a circular—that is, a paper intended to be issued to a great number of persons, or for general circulation—yet it, undoubtedly, is a letter in form. This mode of describing it may perhaps have imposed on the government the necessity of proving that the paper was both a letter and a circular; although, where an instrument is set out in full, the description has been held to be surplusage. *Rex* v. *Williams*, 2 Den. Cr. C. 67; *U. S.* v. *Trout*, 4 Biss. 105; *U. S.* v. *Burnett*, (this court, unreported.) But whether these cases apply to the present case or not, we think the count is not for this reason bad.

2. It is also objected to the first count that it omits to charge that the paper was one "concerning a lottery offering

prizes." This objection is based on an erroneous reading of the statute. The things prescribed are (1) "lotteries," (2) "so-called gift concerts," (3) "similar enterprises offering prizes," and (4) "schemes devised and intended to deceive and defraud the public for the purpose of obtaining money under false pretences." The words "offering prizes," qualify and limit the words "similar enterprises." They indicate the nature of the similarity to "lotteries" and "so-called gift concerts," which must characterize other "enterprises" than "lotteries" and "gift concerts," to bring them also within the embrace of the statute. The words are wholly unnecessary, and would be tautological, as descriptive of "lotteries" and "gift concerts," for the offering of prizes is well understood to be an essential part of a "lottery" or a "gift concert." This, we think, is the obvious construction and meaning of the statute.

3. It is also objected to the first count that it omits averments necessary to show the illegal quality of the writing set forth; that as set out the paper does not on its face, and without explanation, concern a lottery; that the expression "La. tickets" is unintelligible until more than intrinsically appears is supplied by *innuendo*, and that there is no allegation of the existence of a lottery of and concerning which the paper was written.

It is undoubtedly an established rule of criminal pleading that in setting out a writing as an alleged violation of a statute, where words constitute the gist of the offence, if the paper itself, in its own terms, does not purport to be the thing prohibited, the indictment should by further averment or *innuendo* set forth that essential fact. The word "lottery" is not used in the paper set out in the first count. The expressions, "La. tickets," "all prizes," and "official copy of drawings," do not, perhaps, necessarily refer to a lottery, although it is difficult to imagine any other subject to which they could be reasonably attributed, but the paper is averred to be "a certain letter and circular concerning a lottery," and although this is an unartificial and informal mode of averring that the words "tickets," "prizes" and "drawings," used in the paper,

were used in reference to tickets, prizes and drawings of and in a lottery, we think that the defect is not available to the defendant after verdict.

By Rev. St. § 1025, it is provided: "No indictment found and presented by a grand jury, in any district or circuit or other court of the United States, shall be deemed insufficient; nor shall the trial, judgment, or other proceeding thereon, be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." This statute was passed in 1872, being the eighth section of "An act to further the administration of justice," and while its operation is necessarily limited by that provision of the constitution which secures to every person accused the right "to be informed of the cause and nature of the accusation," which has been held to mean that the offence must be set out "with clearness and all necessary certainty to apprise the accused of the crime with which he stands charged," (*U. S.* v. *Cruikshank,* 92 U. S. 542–568,) yet we think that the informality of the averment, that the expressions used in the paper set forth were used concerning a lottery, was one which it was competent for congress to allow the accused to waive by going to trial on the indictment, and that this kind of imperfect and informal averment of a fact essential to make the offence complete, was one of those "matters of form" designed by the statute to be disregarded, when it appears that the defendant was not prejudiced thereby.

It is not the case of an entire want of an averment of a material fact, but rather a case of an informal averment of such fact, and yet the averment is such that no person of ordinary intelligence would fail to understand from reading the indictment that the meaning was that these expressions were void with reference to a lottery. The design of the statute was to discourage the practice on the part of defendants of lying by till after trial and verdict, and then in giving as ground for arrest of judgment mere defects of form, where to all reasonable certainty they had not been misled or prejudiced. And, whatever might be the effect of this defect in the

indictment on a motion to quash, or on demurrer, we think it no sufficient ground in arrest of judgment. It is quite clear the defendant suffered no prejudice on this account. We think, also, that this defect in the indictment is one of those defects of informal averment which, as distingushed from a defect consisting in the total want of an essential averment, is cured after verdict, even at common law. *Heymann* v. *The Queen,* 12 Cox Cr. C. 383; *Bradlaugh* v. *The Queen,* L. R. 32, B. D. 642.

4. It is also objected to the first count that it omits necessary allegations to show that, *in the sense contemplated by the statute,* the letter set forth was one concerning a lottery. The argument is that the statute was not intended to prohibit all letters concerning a lottery, but only such as were designed to promote and further the illegal or immoral business of setting up and carrying on lotteries. It is true that where an act is prohibited, and upon the necessary construction of the statute it is evident that the act is intended to be proscribed only under certain circumstances, or upon facts coming within the well understood reason of public policy which led to the enactment of the statute, it is not generally sufficient to charge the offence in the words of the statute. *Non constat,* the act may be within some of the implied exceptions, (*U. S.* v. *Gooding,* 12 Wheat 460; *U. S.* v. *Pond* 2 Curt. C. C. 265–268;) and no doubt many innocent letters may be written and sent by mail concerning lotteries; as, for instance, a letter from a man to his son, cautioning him not to be induced to spend his money for lottery tickets. This statute clearly has many implied exceptions. But we think that, assuming that there is, as we have held that there is, an averment in substance that the expressions in this letter set out referrred to a lottery, it does appear clearly on the face of the paper that it was such a letter as is within the prohibition of the statute. It admits of no possible meaning unless it is understood to be a communication in the course of a direct dealing in lottery tickets. Such a letter is unmistakably within the reason and the prohibition of the statute.

5. The alleged defect in the second count is that the cir-

cular should have been set forth, not as it is by a description of its contents, but *in hæc verba.* Where the offence consists of words spoken or written, the general rule is that those words must be set forth in the indictment. This rule has been applied in a large number of cases, including the offence of sending threatening letters. *Rex* v. *Dogd,* 2 Easts. P. C. 1122. It seems to us that the present case is within the general rule. In the recent case of *United States* v. *Bennett,* the rule was recognized in a case of indictment for sending obscene matter through the mail, but it was held that the rule did not apply where it appeared by the indictment that the matter was too indecent to be put upon the records of the court, in which particular case the courts in this country have held that the rule does not apply. This objection appears to have been regarded as one of substance and not of form merely, and, therefore, it is not aided by verdict at common law. *Brad-laugh* v. *The Queen,* L. R. 32, B. D. 618. And for the same reason we think it is not cured by the statute above referred to. Rev. St. § 1025.

The motion in arrest must therefore be sustained, as to the second count, and overruled as to the first count.

6. The first three exceptions taken upon the trial were during the empanelling of the jury. A juror being called was asked by defendant's counsel, "Have you any prejudice against the lottery business, or those who are engaged in it?" This was objected to and excluded, and defendant excepted. He was then asked, "Are you disposed in your mind to put an end to the traffic in lottery tickets?" This was objected to and excluded, and defendant excepted. He was then asked, "Are you in favor of active measures for the suppression of the lottery business." This was objected to and excluded, and the defendant excepted. The juror had previously testified that he knew nothing about the case; and he subsequently testified, being further interrogated by defendant's counsel, that he had heard nothing and read nothing, nor talked with anybody at all, about the prosecution of lottery dealers, and that he felt he could go into the jury-box

without any prejudice for or against the defendant, and decide the case strictly within the evidence, without regard to anything that he had heard or known outside of the evidence. He was then sworn as a juror.

It must be assumed that the juror might have answered these questions in the affirmative, and the question is, would he be rendered incompetent as a juror by the fact that he had a prejudice against the lottery business or those who are engaged in it, or that he was disposed in his mind to put an end to the traffic in lottery tickets, or in favor of active measures for the suppression of the lottery business?

Parties have a right to be tried by an impartial jury. This does not mean that they have a right to have jurors who have no prejudices or no opinion as to the policy of enforcing the laws. If the juror had answered all these questions in the affirmative, it would only show that he entertained a prejudice in favor of enforcing the laws of the state of New York against lotteries, which have been in force for a great number of years. We see nothing in this prejudice to disqualify him. In fact, if he is a good citizen and fit to sit on the jury at all, he is found to have a prejudice against what is forbidden by law, and against those who break the law, and is bound, also, to be in favor of active measures for the enforcement of the criminal laws of the state.

The cases cited by the defendant as analogous to this are not in point. *Albrecht* v. *Walker*, 73 Ill. 69, was an action for damages for the sale of intoxicating liquor to plaintiff's husband. A juror testified that he had a prejudice against the business in which the defendant was engaged, but not against the defendant himself, and although he might have a prejudice against the man engaged in the business, he did not know that he would start out in the investigation with a prejudice against the man engaged in it. In reference to this Mr. Justice Breese says: "All honest men have a prejudice, so to speak, against larceny and other crimes, but if no prejudice exists againt a party charged with the crime, we do not think that of itself is ground for challenge for cause."

In *Winnesheik Ins. Co.* v. *Schueller*, 60 Ill. 465–471, the juror

testified that he had a prejudice against insurance companies generally; that it was founded on the fact that he could not comprehend their proceedings, but that the prejudice would not affect his verdict. On this the court said: "It was error to overrule the challenge of the juror. * * * A man may have a prejudice against crime, against a mean action, against dishonesty, and still be a competent juror. This is proper, and such prejudice will never force a juror to prejudge an innocent and honest man. As to this juror, the feeling he entertained against insurance companies was of **a** bigoted and reprehensible character," etc.

The case of *Maretzek* v. *Cauldwell*, 2 Abb. Pr. (N. S.) 407, was an action for libel respecting plaintiff's conduct as a theatrical manager. A juror testified that he was opposed to theatrical representations. It was held that he should not have been, as a matter of law, excluded on that account, but that it was ground only for challenge to the favor. But it will be observed that the juror had a prejudice against a whole class of persons, to which the plaintiff belonged, by reason of their being engaged in a business which was not unlawful. So, when defendants, who were Roman Catholics, were indicted for a riot, growing out of prejudices between Roman Catholics and others, it was held proper to allow a juror to be asked if he had any bias or prejudice against Roman Catholics. *People* v. *Christie*, 2 Abb. Pr. 256.

Where the subject-matter inquired about is one on which there is public agitation or diversity of opinion in the community, and strong feelings are excited, greater latitude of inquiry must clearly be allowed than where the question relates simply to a matter about which there is no such agitation or diversity of opinion. As to the business of dealing in lottery tickets, it seems to us that there is no such diversity of opinion or public agitation in respect to the policy of the laws prohibiting it, and in respect to its injurious effects upon the morals and well-being of the community, as to make these questions proper or reasonably necessary to ascertain the impartiality of the jurors. Moreover, at the time these questions were asked it had not appeared that the defendant

was a dealer in lottery tickets, and if the questions would have been competent at all as tending to disclose a prejudice against the defendant, that fact should, it seems, have been shown, or evidence of it offered. Without regard to that point, however, we think the facts offered to be shown immaterial, because they did not tend to disclose any prejudice which would render the juror incompetent. If the counsel expected to follow these questions up by others more material, he should have put such further questions or suggested the point. As the record stands it cannot be assumed that he desired to show against the competency of the juror anything more than would have been shown by affirmative answers to these questions.

7. Objection was also made to the admission in evidence of other papers enclosed in the same envelope with the letter or circular set forth in the first count, as it was put in the mail. Those other papers tended strongly to show that the paper set forth related to a lottery. They were the circular described in the second count, and two tickets purporting to be tickets in a lottery called "The Louisiana State Lottery." There can be no doubt that they were competent evidence as part of the *res gestæ*.

8. A witness for the prosecution testified that he visited the place of business referred to in the letter set forth in the first count, No. 238 Grand street, a few days after the time alleged in the indictment when the letter was mailed; that he saw there several other papers bearing the same device or monogram as was on the papers enclosed with said letter, and saw the defendant there with a hand stamp make the same impression on a slip of paper.

The witness was then asked: "What else did you see and do there at that time?" This question was objected to. The objection was overruled, and the defendant excepted. The witness then testified to seeing a lottery ticket sold there by defendant's clerk, while defendant was present, and to statements made by the defendant to the witness that this clerk was in his employ, and that this was his business; and that the defendant tried to prevent a deputy marshal, who was

with the witness, from entering the place.   To this evidence the defendant objected, and moved to strike it out.   The motion was denied, and defendant excepted.

The witness further testified, under defendant's objection and exception, that he found in the front office a place for the sale of lottery tickets, and in the back part a policy shop. It is now insisted that this testimony was wholly irrelevant and "utterly foreign to the charge."   It seems to us, however, that it tended to trace to the defendant the possession prior to their mailing of the papers enclosed in the envelope, and his declarations as to his business, so soon after the mailing of this letter, were competent as bearing on the question, whether or not it was he who mailed the letter.   It tended to show that he had motive and opportunity to commit the offence with which he was charged, and such circumstantial evidence is always competent.

9. After the district attorney had announced the testimony for the prosecution closed, the defendant moved for an acquittal on the ground that no evidence had been introduced tending to show the existence of a lottery of and concerning which the papers in question were written or made.   The district attorney then asked time to supply this proof, which was granted, under objection and exception on the defendant's part, and an adjournment was had for this purpose.   It is now insisted that this was error, but we are of opinion that it was within the discretion of the presiding judge to permit the case to be re-opened.

10. On the coming in of the court the district attorney offered in evidence pages 24, 25, 26, of a volume entitled "Laws of 1868 of the State of Louisiana," being an act to authorize the incorporation and establishment of the Louisiana State Lottery Company, to be referred to.   This was objected to on the ground that a private act cannot be proved by the introduction of a book containing it.   The objection was overruled and the defendant excepted.   The book from which this act was read has been before us.   It bears the imprint, "published by authority," on the title page.   The act in quotation is entitled "An act to increase the revenues

of the state, and to authorize the incorporation and establishment of the Louisiana State Lottery Company, and to repeal certain acts now in force."

The first section is as follows: "That, whereas, many millions of dollars have been withdrawn from and lost to this state by the sale of Havana, Kentucky, Madrid and other lottery tickets, policies, combinations and devices, and fractional parts thereof, it shall hereafter be unlawful to sell, offer or expose for sale any of them, or any other lottery, policy, or combination ticket or tickets, devices or certificates, or fractional parts thereof, except in such manner and by such persons, their heirs, executors or assigns, as shall be hereinafter authorized."

The second section declares that certain persons named "are hereby constituted and declared a corporation for the objects and purposes, and with the powers and privileges, hereinafter specified and set forth," and then follow "articles of incorporation," which declare, among other things: "The objects of and purposes of this corporation are—*First*, the protection of the state against the great losses heretofore incurred by sending large amounts of money to other states and foreign countries, for the purchase of lottery tickets and devices, thereby impoverishing our own people; *second*, to establish a solvent and reliable home institution for the sale of lottery, policy and combination tickets, etc., at terms and prices in just proportion to the prizes to be drawn, and to ensure perfect fairness and justice in the distribution of the prizes; *third*, to provide means to raise a fund for educational and charitable purposes for the citizens of Louisiana."

The articles also provide that the corporation shall pay to the state of Louisiana $40,000 per annum, to be credited to the educational fund. The third section of the act imposes a penalty on any person for selling or offering for sale any lottery tickets in violation of the act. The fourth section grants to the corporation the exclusive privilege, for 25 years, of establishing a lottery and selling tickets. The seventh section repeals certain laws, namely: An act, passed February 17, 1866, entitled "An act to license the vending of lottery

tickets;" "An act to authorize the sale of stamps to vendors of lottery tickets." passed February 28, 1860; and an act to amend the last named act, passed March 22, 1866, and "all other laws, or parts of laws, inconsistent with or contrary to the provisions of this act."

The acts thus expressly repealed are general statutes. The act of February 17, 1866, was an act creating offences and imposing penalties. We have no doubt that this statute read in evidence is to be regarded as a general statute or public act, and not as a private act. It is largely made up of provisions in the nature of general legislation, and the fact that, incidentally, and as a means towards making such general legislation effectual, it grants corporate powers to certain persons, does not make it the less a general law. Laws are either public or private, and this is clearly public. Other objections that it was not proved as a private law have no force.

11. The prosecution having rested again, defendant's counsel renewed his motion to direct a verdict of acquittal upon the ground specified in the former motion, that there was no evidence of the existence of a lottery of and concerning which the papers in question could have been written or made, or that they are letters and circulars concerning any lottery; also on the further ground, that, be the act what it may, there is no evidence of any action or acceptance of the charter there tendered, or that any organization under that act was ever effected by the corporators named therein, or that the corporation, if it ever existed, had not been dissolved by some one of the various methods known for the dissolution of corporations at the time the indictment was found, or that the charter had not been forfeited or withdrawn by subsequent legislation. This motion was denied and defendant excepted. This exception is based upon the theory that it was necessary for the government to prove that the lottery was one established by law, having a legal existence; that it was necessary to prove that the party or parties who issued the tickets enclosed in the envelope, which purported to be issued by the Louisiana State

Lottery Company, were a corporation, as they purported to be; that they had and carried on a real lottery.

There was abundant evidence in the case, to justify the denial of the motion, that there were some parties purporting to be and calling themselves by the name of the Louisiana State Lottery Company who were carrying on a lottery, but it was wholly immaterial whether they were the same persons named in this act, or whether those persons had accepted their charter or not. It was none the less a lottery in fact and within the prohibition of the statute, whether legally established or wholly illegal, whether its promoters were duly incorporated or not. Indeed, we think that the mailing of a letter or circular concerning a projected lottery, one not yet in existence, would clearly be within the letter and spirit of the statute, if it were a letter or circular promoting or designed to aid in the organization and setting up of a lottery. There was, therefore, no reason why, at this stage of the case, the court should direct an acquittal of the defendant, when the papers themselves, with the mailing of which he was charged, bore on their face strong if not conclusive evidence that they related to an existing or established lottery. No more evidence of the existence of a lottery need to have been given to justify a conviction than the papers and tickets enclosed in the envelope.

12. The defendant offered no evidence, and the remaining exceptions are to the judge's charge to the jury. The judge charged the jury, among other things, as follows: "In order to convict, you must find that it is a letter concerning a lottery in the one case, and circular concerning a lottery in the other. In determining that question you are not confined to the words in the paper. You may look at the surrounding circumstances; the letter sent which was the order, the tickets enclosed in Exhibit No. 1, (i. e., the letters set out in the first count,) apparently in compliance with the order, the occupation of the defendant, and all the other circumstances in the case, in order to determine whether or not that letter, forming the subject of the first count, was concerning a lottery. If you find that it was concerning a lottery, then it was an

illegal article in the mail, in case you find it to have been there deposited. If you find that this Exhibit No. 1 was deposited in the mail, and you find that these two papers that were in it—in one case a letter and in the other case a circular—were concerning a lottery, then the question arises, who deposited these papers in the mail? Before proceeding to that I should remark that there has been evidence going to show the existence of a lottery known as the Louisiana State Lottery. The evidence from the statute-books of the state of Louisiana, together with the sale of the tickets put in evidence, in the absence of any evidence to the contrary, will justify you in finding that there is such a lottery as the Louisiana State Lottery. If you find that this letter, Exhibit No. 1, was deposited in the mail, and that the papers in it are concerning a lottery in existence—the Louisiana State Lottery—you then come to the question whether the defendant is shown to have deposited Exhibit No. 1 in the mail, as charged."

The court further charged the jury that they must be satisfied, beyond a reasonable doubt, that the letter (Exhibit No. 1) was mailed; that the papers in it were concerning a lottery, and the man who deposited it, or caused it to be deposited, was the defendant. The defendant excepted to that part of the foregoing portion of the charge which states that the occupation of the defendant is to be considered in determining whether the letter concerns a lottery, and that the jury may resort to surrounding circumstances to determine as to the character of the letter and circular; also to the language, "that the evidence of the statute-book and the sale of the tickets have proven that there is such a thing as the Louisiana State Lottery;" and thereupon the court further charged that the evidence of the statute of Louisiana and of the sale of tickets was evidence from which the jury may conclude that there is such a lottery, in the absence of proof to the contrary. To this further charge the defendant excepted.

That the defendant's occupation of a dealer in lottery tickets, and the other extrinsic circumstances, were proper to be considered by the jury, on the question whether the letter

related to a lottery, if, in their judgment, they threw any light on the meaning of the letter, in case its meaning was doubtful, which it does not seem to us to have been, we think there can be no question. A party's acts and declarations may always be resorted to to show the meaning of his writings, and obscure or doubtful expressions can often be only elucidated by a reference to surrounding circumstances.

There was no ground of exception in that part of the charge which, upon this question, whether the letter was concerning a lottery, allowed the jury to consider the fact that there was such an act on the statute-book of Louisiana. In determining whether or not there was such a lottery as that named upon the papers enclosed with the letter, the fact that such an act had been passed was a circumstance that was competent evidence. The tickets and papers enclosed were such as would be likely to follow and result from the passage and acceptance of such an act, and although there was no other evidence that the statute had ever been acted upon, these papers were, we think, some evidence of that fact; and there was a correspondence and apparent connection between the act and the tickets and papers which made the act, without further evidence of any action taken under it, which are circumstances tending to show that there was in fact such a lottery. As we have held above, the regularity of the organization of the company, or the legality of the acceptance of the charter, or its combined legal existence, were wholly immaterial and aside from the question in this case. In the particulars thus excepted to we think the defendant has no just ground of complaint.

13. The judge also charged the jury as follows: "If you find that the accused received an order for two half tickets, such as were in the letter, Exhibit No. 1, together with two dollars enclosed therefor, sent to him under a fictitious name; and if you find that Exhibit No. 1 was thereafter deposited in the post-office for mailing, and was a compliance with the order which the accused had received, those circumstances, together with the undisputed fact that the accused was engaged in selling lottery tickets; that the name used in the

address of the letter in Exhibit No. 1 was the same as that signed to the order, and was fictitious; and that the letter was accompanied with tickets bearing his stamp and his business card, in the absence of evidence tending to show the contrary, will justify the conclusion that the defendant was the person who did deposit in the post-office, for mailing, the letter, Exhibit No. 1, or procured it to be so deposited." To this part of the charge the defendant excepted. The judge, also, in the same connection, distinctly charged the jury that this was a question of fact for them to pass upon, and that they should give the defendant the benefit of any reasonable doubt arising from the lack of sufficient evidence; that if the evidence given on the part of the government did not satisfy their minds on the disputed question of fact, they were to give him the benefit of the doubt; but, if they were satisfied beyond a reasonable doubt, it was their duty to convict him. We think there was no error in this portion of the charge. The question of fact was fairly submitted to the jury, and the matters referred by to the court were such as they had the right and were bound to consider, in determining that question.

14. The defendant's counsel requested the court to charge as follows: "No presumption arises in this case from the impression of a post-office stamp upon the envelope enclosing either of the papers in evidence as to the mailing of any or either of such papers." The court refused so to charge, and defendant excepted. The letter in question bore the stamp or mark of the New York post-office, and it is conceded that the general rule is that such a stamp or mark would be *prima facie* evidence that the letter had been in the mail; but it is contended that no such presumption arises in this case, because there is evidence that the witness, Comstock, who testified that he took these letters from the mail, also testified that he had received, from the postmaster at Trenton, N. J., and other postmasters, during the past twelve months, a large number of empty envelopes, bearing the stamps of three post-offices, which had never been through the mail.

The letter or order referred to in the charge to which the

letter, Exhibit No. 1, appeared to be an answer, was testified to by the witness as being enclosed in such a stamped envelope, bearing the postmark of the Trenton office, and he testified that he delivered it to the superintendent of the registered letter department at the New York post-office on the sixth of November, 1879, the day after its date, and the day before the date of Exhibit No. 1. The argument is that this evidence shows such a deviation from the system of business on which this presumption rests that the presumption fails. We think, however, that there is nothing in this evidence which controls or prevents the application of the general rule of evidence that the regular postmark is presumptive evidence of the mailing of the letter. It does not show, as defendant's counsel claims, any "gross irregularities on the part of officials of the post-office, or that the supposed system is so disregarded as to be no system." Notwithstanding the occasional departures from the rule shown, which appears to have been in aid of justice, the general rule remains that the postmark is an indication that the letter offered in evidence has been through the mails.

Upon the whole case, therefore, we find no error upon the trial, and the motion for a new trial must be overruled.