# JOHN H. DALTON

## v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

### Opinion filed December 22, 1906.

1. RAPE—*what does not open the door to improper evidence.* Calling out from the accused, on cross-examination, the statement that he had not been in the room up-stairs over a certain saloon at any time since he sold it, in which room the prosecutrix testified the rape was committed, does not open the door to rebuttal evidence that the accused had been in such room with another girl, an associate of the prosecutrix, notwithstanding no objection was made to the improper cross-examination.

2. SAME—*what does not render evidence of actions with other women competent.* In a prosecution for rape, where the proprietor of the saloon, in a room over which the crime is claimed to have taken place in the daytime, testifies that the rooms above the saloon were open only at night and that the street door was kept locked and bolted in the daytime, evidence that the accused was up-stairs in the room with another girl in a certain month is not admissible as tending to disprove the proprietor's testimony, there being no showing that the parties went in at the street door or that the meeting was in the daytime.

3. SAME—*when improper evidence will reverse.* In a rape case, where the prosecutrix and the principal witnesses are prostitutes and their evidence is contradicted *in toto* by the defendant, it is prejudicial error to admit incompetent evidence tending to show the accused was in the habit of maintaining improper relations with young girls incapable, in law, of consenting to sexual intercourse.

4. SAME—*what does not amount to former jeopardy—practice.* Giving an instruction, at the close of the evidence for the prosecution, directing the jury to find the accused not guilty on two of the four counts of the indictment, no verdict being then returned, is not an acquittal of the charge contained in the other counts, upon which a verdict was subsequently returned; nor can the defense of former jeopardy, based upon such circumstances, be first raised in the motion in arrest of judgment.

HAND and CARTER, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

BENSON LANDON, and B. C. BACHRACH, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (ROBERT N. HOLT, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error was arraigned in the criminal court of Cook county to answer to an indictment consisting of four counts. The first count, alleging that he was of the age of seventeen years and upwards, charged him with unlawfully, forcibly and feloniously assaulting Stella Lackwa, a female under the age of sixteen years, without her consent, and that he did wickedly, unlawfully and feloniousy ravish and carnally know the said Stella Lackwa. The second count stated the age of plaintiff in error as in the first, and charged that he did, with the consent of Stella Lackwa, a female under the age of sixteen years, make an assault upon her, and wickedly, unlawfully and feloniously did ravish and carnally know her. The third count alleged that plaintiff in error was of the age of sixteen years and upwards, but did not state the age of Stella Lackwa, and charged that he forcibly ravished her against her will. The fourth count charged plaintiff in error with taking indecent liberties with Stella Lackwa, a female under the age of sixteen years. His plea was not guilty and he was put on trial before a jury. At the close of the evidence for the prosecution, which only tended to prove an act of sexual intercourse between plaintiff in error and Stella Lackwa by agreement and with her consent, the court, at the request of plaintiff in error, instructed the jury to find him not guilty as to the first and third counts, and refused to give like instructions as to the second and fourth counts. No verdict was returned at that time, but

the direction was treated as a withdrawal of the first and third counts and the trial proceeded. The evidence for the plaintiff in error and rebuttal evidence was then introduced. The jury returned a verdict finding plaintiff in error guilty as charged in the indictment and fixing his punishment at imprisonment in the penitentiary for the term of five years. After overruling motions for a new trial and in arrest of judgment the court sentenced plaintiff in error in accordance with the verdict.

Stella Lackwa was fifteen years old on July 9, 1905. She was engaged in the business of a prostitute, and had commenced the practice of having intercourse with men for money some time in 1903. She and Viola Marsh, a prostitute of about the same age, were the principal witnesses for the prosecution, and they were corroborated to some extent by Elsie Tookey, a girl of the same age and occupation. Stella Lackwa testified that she and Elsie Tookey and Viola Marsh went to defendant's barn back of his residence, and he told her if she had intercourse with him he would give her five dollars and would notify her when she would see him; that afterward, in October, 1905, he met her and Viola Marsh, and said he would walk ahead and she should meet him at the corner of Clark and Elm streets; that she and Viola walked to the place designated and found a saloon with a chop suey sign; that they went up-stairs from Clark street and found defendant and another man there in a private dining room; that she and Viola took a drink of pop, and defendant then said he would excuse Viola and the other man and they went out; that defendant got a key from the waiter and locked the door, and that an act of intercourse then took place on the floor, for which defendant paid her five dollars. The room was 7x7 feet, and there was a table in it 3x5 feet, with two chairs on each side. Viola Marsh gave the same account of going to the place, and said that when she and the other man were asked to leave the small room, they went into the larger room and sat there and

talked until Stella came out. She fixed the time as August or September, instead of October, the month given by Stella. Viola Marsh occupied a room in an apartment house opposite defendant's residence, and Elsie Tookey testified that the girls had been in that room, and when they came out defendant came out of his house and beckoned to them to meet him, and she took Stella to the place he designated in pursuance of a previous agreement, by which he promised to pay her money to bring Stella up to see him. She said that he paid her as he agreed. These girls were all in what they called the Woman's Refuge, at 5024 Indiana avenue, Chicago, and had been sent there by the juvenile court.

Defendant had once owned the saloon at the corner of Clark and Elm streets and ran it in the name of his wife, but sold it to Charles E. Weadley in July, 1903. Over the saloon there was what was called a restaurant, with two enclosed rooms, one 14x12 feet and the other 7x7 feet. The time fixed by the witnesses for the prosecution for the alleged visit to the restaurant was three or four o'clock in the afternoon. Weadley and his bar-keeper, Edward Summers, testified that the restaurant was only run at night, from six o'clock in the evening to five in the morning; that it was never open in the daytime; that the street door was bolted on the inside at all times during the day; that the restaurant man and waiter came shortly before six and the door was then unbolted, and that there was no chop suey sign about the place. Summers, who was identified by the two girls as the man who served the pop, denied that he ever served any pop to them or to defendant with any woman. The defendant denied that he ever was in the restaurant with Stella Lackwa or had intercourse with her at any time, and he denied having had any relations with her or paying her or Elsie Tookey any money. His denial included everything testified to by the girls tending to criminate him in any way.

On the cross-examination of defendant efforts were made to show improper relations between him and Viola Marsh,

by asking him if he did not visit her in her apartments in the
Essex building.   On the cross-examination of Summers the
prosecution attempted to prove that the defendant went up-
stairs at the saloon with other girls, and offered to prove that
he went up there in October, in the daytime, with Mabel
Larsen, another young girl associate of Stella Lackwa.   Ob-
jections to the questions and offer were sustained, but in
rebuttal the court allowed the prosecution to ask Mabel Lar-
sen whether defendant ever took her up to the restaurant
room.   She testified that she was up there in the private
room in October with him.   It is contended that the evi-
dence was properly admitted, because the defense had opened
the door for that kind of evidence by having defendant tes-
tify that he never was up-stairs at any time.   That claim is
unfounded.   He did not so testify in his direct examination,
but on cross-examination, in answer to questions put to him,
he said that he had been at the bar since he sold the place
but had not been up-stairs at any time.   The statement was
irrelevant and was brought out on cross-examination, and
the fact that no objection was made did not entitle the prose-
cution to draw it into the issue and contradict it.   The evi-
dence of Mabel Larsen was not competent to disprove the
testimony that the street door was always bolted in the day-
time, for the reason that she did not testify it was in the
daytime when defendant took her up there or that they went
in at the street door.   The effect of the evidence was most
harmful to the defendant, as showing that he was in the
habit of maintaining improper relations with young girls
incapable, in the law, of consenting to sexual intercourse.
That was the effort of the prosecution during the trial,
and it was finally successful through an erroneous ruling of
the court.

It is argued that by the instruction of the court to find
defendant not guilty as charged in the first and third counts
he was acquitted of the same offense of which the jury found
him guilty under the second count, and having been once in

jeopardy on that charge he could not be again tried and convicted. No question of that kind was raised until the motion in arrest of judgment, and while a former acquittal may be proved under the plea of not guilty, (*Hankins* v. *People,* 106 Ill. 628,) it would be a new practice to allow a defendant to await the verdict, and then, by a motion in arrest of judgment, say, in effect, that he was not bound to make answer to the indictment because he had previously been tried and acquitted of the same offense. Even if the defense could be made in that way, there was no acquittal of the charge contained in the second count. There was no verdict until the final one by which defendant was found guilty.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HAND and CARTER, JJ., dissenting.