UNITED STATES v. J. L. HOPKINS & CO.

(District Court, S. D. New York. February 13, 1912.)

1. Food ⬿20—PROSECUTION FOR VIOLATION OF FOOD AND DRUGS ACT—PLEADING.

Proceeding by criminal information for violation of the Pure Food Law (Act June 30, 1906, c. 3915, 34 Stat. 768 [Comp. St. 1913, § 8717 et seq.]) is merely the application of a long-used proceeding to misdemeanors created by a new statute, which does not change the course of trial, and the only pleas allowable are those in abatement, in bar, or the general issue.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 21; Dec. Dig. ⬿20.]

2. CRIMINAL LAW ⬿288—PLEAS.

It is permissible, but not necessary, to raise the defense of limitation in a criminal case by special plea.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 660, 661; Dec. Dig. ⬿288.]

3. CRIMINAL LAW ⬿291—PLEAS.

A plea of autrefois acquit or convict should not be tendered simultaneously with the general issue; but all defenses, both dilatory and peremptory, not going to the merits of the controversy, should be first pleaded.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 667; Dec. Dig. ⬿291.]

4. CRIMINAL LAW ⬿300—PROSECUTION FOR VIOLATION OF FOOD AND DRUGS ACT—PLEA.

A "plea and answer" filed to an information for violation of the Pure Food Law held only a statement of evidence intended to support a plea of not guilty, and not in fact a plea.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 684–686; Dec. Dig. ⬿300.]

Criminal prosecution by the United States against J. L. Hopkins & Co. On motion to strike out parts of plea and answer of defendant. Sustained in part.

See, also, 199 Fed. 649.

Having been called upon to plead, defendant offers a written document, entitled "Plea and Answer," whereupon the prosecution moves to quash (i. e., strike out) as irrelevant or improper most of said written instrument. An examination of the "Plea and Answer" shows it to consist of four parts: (1) A declaration that defendant is not guilty; (2) that prosecution is barred by the statute of limitations; (3) that defendant was formerly acquitted of the same misdemeanors as are charged in the present information; (4) a statement which may be summarized as follows, viz.:

Long before the passage of the Pure Food Act, gum tragacanth was a well-known article of commerce. It is a vegetable gum, exuding from many varieties of plants, which plants exist for the most part in Asia, but all such vegetable gums having the same properties are known as tragacanth. The United States Pharmacopœia (8th Ed., Sept., 1909) is a publication which (for the purposes of the Pure Food Law) fixes the standard by which the quality of drugs shall be determined. The edition of the Pharmacopœia above referred to declares in its preface that: "The standards of purity and strength [described in the book] are intended to apply to substances used solely for medicinal purposes and when professionally bought, sold, and dispensed as such." Said book contains a complete list of drugs, of which "a

medicine dose" is prescribed, and neither tragacanth nor senna is on that list.

In May, 1909, defendant imported "33 bags gum Indian tragacanth." One of these bags was inspected by the customs authorities and an examiner of the Department of Agriculture, and passed as a "crude drug." Thereafter said gum was ground by defendant, and after such grinding a skilled chemist made an analysis thereof and reported that said ground tragacanth complied with the said Pharmacopœia's requirements. Thereafter defendant received a pretended order from a firm in Norfolk, Va., asking, among other things, for five pounds tragacanth gum and ten pounds senna leaves. This order was really given by an employé of the Department of Agriculture. Defendant sent, inter alia, both the tragacanth gum and senna leaves, filling the order for tragacanth with its second quality, described as "tragacanth gum Mo. 1 U. S. P. powder." That at or just before the time of this sale certain employés of the Department of Agriculture had publicly claimed in writing that gum tragacanth from India was not real tragacanth; but of this fact no public notice had been given, nor was defendant aware of it at the time of shipment.

Defendant had long sold and catalogued several varieties of senna, described as "whole leaf U. S. P.," "half leaf," and "broken." Defendant received an order from a firm of San Francisco, Cal., for one barrel of senna "U. S. P. broken powder," and for two bales "senna Alex. U. S. P. broken." Defendant filled this order partially, by shipping two bales of senna, broken, which had been passed by the customs and agricultural authorities of the United States. Said order so received from California was not a genuine order, but one given at the instigation of the United States Department of Agriculture. Senna in the leaf is not used for medical purposes, but by soaking and filtration is made into extract, so that the broken leaf is as effective as the whole leaf.

The information consists of four counts: (1) Shipping in interstate commerce adulterated gum tragacanth, in that it differs from the standard of strength, quality, and purity laid down in the United States Pharmacopœia; (2) shipping in interstate commerce misbranded gum tragacanth, in that the article was labeled with the false and misleading statement that it was tragacanth of the standard prescribed by said Pharmacopœia, whereas it was not gum tragacanth, but Indian gum, and not of the standard prescribed as aforesaid; (3) shipping in interstate commerce adulterated senna, not of the strength, quality, and purity prescribed by the United States Pharmacopœia, in that it contained stalks, stones, seeds, pebbles, and other substances foreign to senna leaves; (4) shipping in interstate commerce misbranded senna, in that its label represented the article to consist entirely of senna leaves of the standard prescribed by said Pharmacopœia, whereas it in fact consisted of a mixture of said leaves with stalks, seeds, etc.

Robert P. Stephenson, Asst. U. S. Atty.

Hector M. Hitchings, of New York City, for defendant.

HOUGH, District Judge (after stating the facts as above). [1] It is suggested that, so extraordinary are the prosecutions or proceedings brought under the Pure Food Law, some new procedure should be brought out in respect of them, apparently for the purpose of preventing a trial occurring on the criminal side of the court until after the facts have been looked into by the court itself. This is a startling innovation, and so far as I am concerned might be disposed of by expressing my unwillingness to attempt such new procedure, and my belief that juries are far more apt to be extremely tender of defendants and their rights, real or pretended, than any judge could be.

But it is perhaps advisable to indicate, even at some length, the view that no such method of judging facts is permitted by the crim-

inal law. It is the invariable practice in this district to prosecute under the Pure Food Law by criminal information; that is, the government alleges a misdemeanor.

It is not open to doubt that Congress has created several possible misdemeanors by the passage of the act in question. Procedure by criminal information is common-law practice, and, being a matter of practice, it needs no statute to support it. Originally it was a concurrent remedy with indictments for all misdemeanors except misprision of treason. In practice, even before the independence of the United States, leave to file informations was seldom sought by the Attorney General, except at the instance of a high officer of government.

Informations under the Pure Food Law are perfect representatives of this ancient practice, being brought by the District Attorney under leave of court at the instance of the Department of Agriculture. In the United States the function of an information is limited, however, by the constitutional provision that no one shall be held to answer for a "capital or otherwise infamous crime," except on presentment by the grand jury. On this subject, generally, see 2 Hawk. P. C. c. 26, § 3, page 326 et seq.; United States v. Waller, 1 Sawy. 701, Fed. Cas. No. 16,634; Ex parte Wilson, 114 U. S. 425, 5 Sup. Ct. 935, 29 L. Ed. 89; United States v. De Walt, 128 U. S. 393, 9 Sup. Ct. 111, 32 L. Ed. 485.

An information, therefore, being no novelty, it does not become one by being applied to a new misdemeanor. The course of trial is and must remain that of an indictment. It is therefore necessary to inquire what pleas are possible either to an indictment or information, there being no such thing known as an answer in criminal law in the sense in which that word is used on the civil side. All possible pleas on the criminal side of this court must be either in abatement, in bar, or the general issue.

A motion to quash is not a pleading, and therefore is not included, and jurisdictional pleas, which are sometimes given as a separate class, are really either in abatement or bar according to whether the objection is to a particular court or to courts in general.

[2] Tested by these rules, this defendant has (1) pleaded the general issue, which is of course proper and sufficient; (2) the statute of limitations is raised by special plea, which is permissible, but not necessary (United States v. Brown, 2 Lowell, 267, Fed. Cas. No. 14,665); (3) a plea is tendered of autrefois acquit, concerning which plea the record is in the same condition as found by me in United States v. Robinson (memorandum filed January 18, 1910); and, finally, (4) the evidential matter as above digested is put into a pleading.

[3] It may first be noted that the plea of autrefois acquit or convict should not be tendered simultaneously with the general issue. It is the rule in criminal law, as it was at common law on the civil side, that defenses both dilatory and peremptory, if they did not go to the merits of the controversy, should be pleaded first, in order that judgment (if against defendant) might be respondeat ouster. This

practice arose after the severity which directed final judgment against defendant on overruling a plea in bar (Rex v. Taylor, 3 B. & C. 502) had been modified.

This, however, being a matter of detail only, I have examined the record as if the prosecution had filed a replication to the plea of autrefois acquit, and find by the record that the previous information failed for what the court considered defects apparent on the face thereof. Therefore it was no information, and the defendant was never in jeopardy.

[4] Notwithstanding the informality of the fourth plea, what is sought to be raised is, I think, plain enough, viz.; unless this defendant shipped a "drug," it is not guilty under this information. "Drug" is defined by the sixth section of the act, and the standard of drugs is to be ascertained from the United States Pharmacopœia by the seventh section thereof. What the Pharmacopœia says, therefore, the defendant asserts the court may take judicial cognizance of, and, having done this, it is found that neither leaf senna nor gum tragacanth is a drug in the sense in which the Pharmacopœia uses that word; i. e.:

"Substances used solely for medicinal purposes and when professionally bought, sold, and dispensed as such."

If such a plea as this (plainly in bar, if it is anything) can be tried, it must be tried either by the court or the jury; and, no matter which course of trial is adopted, it is a sure test of a good plea that the trying power can give judgment or verdict either way. If it be regarded as a plea triable by the court only, judgment against the defendant would be respondeat ouster; but such judgment would be based necessarily upon the insufficiency of the facts alleged, admitting them to be true. This reduces the whole matter to an absurdity, for, if the facts alleged (as I understand them) be true, the defendant is not guilty, and the court has no more power to pronounce a judgment of not guilty than it has to enter one of guilty.

I think this analysis shows that the alleged plea amounts to no more than a statement of evidence intended to support the plea of not guilty; therefore it is not a plea at all.

It is ordered that the pleas of not guilty and statute of limitations stand, that the plea of autrefois acquit be overruled after an inspection of the records of this court, and that the remainder and balance of the document filed and entitled "Plea and Answer" be stricken from the files as unauthorized by law.