## BRADY v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
January 3, 1928.

No. 7786.

1. Indictment and information ⟵119—Indictment for using mails to defraud will not be held bad for alternative allegation relative to depositing letters in post office which might be rejected as surplusage (Pen. Code, § 215 [18 USCA § 338]).

Indictment for using mails to defraud under Penal Code, § 215 (18 USCA § 338), *held* not bad for allegation in alternative relative to depositing of letters in post office, where count was adequate without such allegation, since such allegation was surplusage.

2. Indictment and information ⟵71—Scheme to defraud in use of mails is charged with sufficient particularity if accused is apprised of what he will meet on trial (Pen. Code, § 215 [18 USCA § 338]).

Though formation of scheme to defraud is essential element of offense of using mails to defraud within Penal Code, § 215 (18 USCA § 338), gist of offense is use of mails to execute such scheme, and it is therefore sufficient to charge scheme with such particularity as will enable accused to know what is intended and apprise him of what he will be required to meet; it not being necessary to plead scheme with all certainty as to time, place, and circumstance required in charging gist of offense.

3. Indictment and information ⟵71—Indictment for using mails to defraud, alleging scheme to sell bank certain notes, held to set forth scheme with sufficient certainty (Pen. Code, § 215 [18 USCA § 338]).

In prosecution for using mails to defraud under Penal Code, § 215 (18 USCA § 338), count alleging scheme to induce bank to purchase certain notes and certificates of deposit and deposit worthless collateral *held* to set forth scheme with sufficient certainty to acquaint defendant with charge against him and enable him to prepare defense.

**4. Post office ☞48(4½)—Indictment for using mails to defraud held to allege that purpose of scheme was to obtain money and property rather than credit (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for using mails to defraud under Penal Code, § 215 (18 USCA § 338), indictment charging scheme to induce bank to purchase certain notes and certificates of deposit *held* to clearly allege purpose to defraud such bank by obtaining money and property, as against contention that it alleged scheme to obtain credit.

**5. Post office ☞49(11)—Evidence held insufficient to support conviction for using mails to defraud by inducing purchase of notes (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution, under Penal Code, § 215 (18 USCA § 338), for using mails to defraud by inducing purchase of notes, evidence *held* insufficient to support conviction, in that it failed to establish that defendants caused letters to be delivered through United States mails, · and therefore failed to establish gravamen of charges.

**6. Criminal law ☞306—Presumptions cannot be based on presumptions in determining sufficiency of evidence to·support conviction.**

In determining sufficiency of evidence to support conviction, it is well settled that presumptions cannot be based on presumptions.

**7. Criminal law ☞196—Where proof of allegations charging offense under one count would support conviction under another count charging another offense, such offenses are identical; "identical offense."**

Test as to whether offenses charged in different counts of indictment are identical is whether, if what is set out in one had been proved under the other, there could have been a conviction.

**8. Criminal law ☞204—Accused may waive constitutional immunity from second jeopardy.**

Constitutional immunity from second jeopardy is personal privilege which accused may waive.

**9. Criminal law ☞204—Waiver of immunity from second jeopardy may be express or implied.**

Waiver by accused of constitutional immunity from second jeopardy may be express or implied.

**10. Criminal law ☞290—Ordinarily, constitutional immunity from second jeopardy must be pleaded specially.**

As general rule, constitutional immunity from second jeopardy must be pleaded specially by accused.

**11. Criminal law ☞204—Waiver of defense of former ·jeopardy will be implied, where accused pleads not guilty and proceeds to trial, verdict, and judgment.**

Waiver of constitutional immunity from second jeopardy will be implied, where accused pleads not guilty and proceeds to trial, verdict, and judgment without raising such defense.

**12. Criminal law ☞913(6), 968(6), 1028— Defense of second jeopardy cannot be raised for first time by motion in arrest or for new trial or on appeal.**

Defense of second jeopardy cannot be raised by accused for first time by motion in arrest of judgment or by motion for new trial or on appeal.

In Error to the District Court of the United States for the District of Kansas; Merrill E. Otis, Judge.

James E. Brady was convicted of using the mails to defraud and of conspiracy to use the mails to defraud, and he brings error. Reversed and remanded, with directions.

See, also, 24 F.(2d) 397, 405.

Clyde Taylor, of Kansas City, Mo. (Ernest S. Ellis, of Kansas City, Mo., on the brief), for plaintiff in error.

Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan. (Al. F. Williams, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. James E. Brady, the plaintiff in error, William S. McClintock, and Arthur J. Baxter were charged by indictment with violations of sections 215 and 37 of the Penal Code (USCA tit. 18, §§ 338 and 88). The indictment contained nineteen counts. The first eighteen counts charged violations of section 215, and the nineteenth count charged a violation of section 37 of the Penal Code.

Brady and Baxter were tried jointly. While it does not clearly appear, we infer from the record that McClintock was not tried. Baxter was found not guilty under instructions of the court on each count.

Brady was found guilty under counts 1, 2, 3, 4, 5, 6, 8, 9, 13, 14, 15, 17, and 19. He was sentenced to imprisonment in the penitentiary as follows: On the first count, five years; on the second count, five years, "to begin at the expiration of the imprisonment imposed on the first count"; on the nineteenth count, two years, "to begin at the expiration of the imprisonment imposed on the second count"; and, on each of the remaining counts, five years, to run concurrently with the sentence imposed on the first count.

Count 1 charged that Brady, McClintock, and Baxter, hereinafter called defendants, "did knowingly, willfully, unlawfully, and feloniously devise and intend to devise a scheme and artifice to defraud Leo A. Mer-

gen, the Union National Bank of Beloit, Kan-sas, * * * by obtaining money and property by means of false and fraudulent representations, pretenses, and promises."

It further alleged that the scheme and device was as follows: That defendants, in order to induce the Union National Bank to purchase from them certain notes and certificates of deposit, would by means of personal visits, solicitations, conversations, and correspondence, represent to Mergen, as cashier of the Union National Bank, that such notes and certificates of deposit were legal, valid, subsisting obligations of the individuals, partnerships, and corporations whose names were signed thereto or indorsed thereon, and that such notes and certificates of deposit were worth their face value and would be paid in full when due by the makers and indorsers thereof. It further alleged that it was a part of such scheme that the defendants would agree with Mergen to deposit with such notes and certificates of deposit collateral securities, to wit, stock of the Suburban Utilities Company and the Penny Products Vending Company, and would represent that such collaterals were of a value equivalent to or greater than the amount of money to be paid to defendants upon the note or certificate of deposit for which such stock would be deposited as collateral. It further alleged that it was a part of such scheme that the defendants would agree to deposit with such notes and certificates written guaranties of the worth of such notes and certificates of deposit, signed by James E. Brady and R. N. Stout, and would represent to Mergen that Brady and Stout were responsible parties and financially able to make such guaranties. It further alleged that it was a part of such scheme that defendants would furnish to Mergen what would purport to be a true and correct financial statement of the financial worth and responsibility of the companies and individuals whose names were signed as makers of such notes, and of the companies and corporations, the certificates of stock of which were to be pledged as security for such notes. It further described certain certificates of deposit and promissory notes and alleged that such notes and certificates were the ones intended by the defendants to be sold to the Union National Bank pursuant to such scheme, and that such notes were in fact sold and transferred to the Union National Bank. It further alleged that it was a part of such scheme that the collateral security to be deposited would be entirely worthless and of no value at the time said securities would be deposited, that the written guaranties would

be signed by persons who would not be responsible for the amounts represented by such notes and certificates of deposit at the time such guaranties would be given, and that the financial statements would be entirely false and fraudulent. It further alleged that it was a part of such scheme that, by means of the false and fraudulent representations, pretenses, and promises, the Union National Bank would be induced to purchase such notes and certificates of deposit and pay to the defendants certain sums of money on such notes and certificates of deposit. It further alleged that the defendants at all times knew that the representations, pretenses, and promises to be made and which were in fact made, would be and were false and fraudulent, and that they intended thereby to defraud the Union National Bank out of money and property.

Count 1 then alleges that the defendants, "in the execution of the said scheme and artifice to defraud * * * and to further the purpose of the same, did on the 10th day of February, A. D. 1923, knowingly, willfully, unlawfully, feloniously, and fraudulently cause to be delivered to one Leo A. Mergen at Beloit, Kansas, * * * through the United States mails by the United States post office at Beloit, Kansas, * * * a certain * * * letter."

Count 1 then sets up a letter dated February 8, 1923, addressed to L. A. Mergen, Beloit, Kan., and signed by W. S. McClintock.

Count 1 then alleges "that said letter * * * had theretofore been deposited, or caused to be deposited, by the said defendants in the United States mails at the United States post office at Kansas City, Missouri."

Counts 2 to 18, inclusive, are substantially the same as count 1, except they set up different letters, and except the letter set up in count 7 is signed by McClintock, Quant & Ferguson, and the letters set up in counts 8, 16, 17, and 18 are signed by J. E. Brady.

Count 19 charged that the defendants "did * * * knowingly, willfully, unlawfully, and feloniously, conspire, combine, confederate, and agree together, in devising and intending to devise a scheme and artifice to defraud Leo A. Mergen of Beloit, Kansas, and the Union National Bank of Beloit, * * * and it was a part of said conspiracy, for the purpose of executing said scheme and artifice, and attempting so to do, to cause to be delivered through the United States mails by the United States post office at Beloit, Kansas, * * * certain letters and communications, which the defendants had theretofore

24 F.(2d)—26

caused to be deposited in the United States post office at Kansas City, Missouri, * * * and which scheme and artifice to defraud was that set forth and described in count one of this indictment, * * * that in furtherance of said combination, confederation, conspiracy, and agreement, and to effect the object thereof, said defendants did do and perform and cause to be done and performed certain overt acts, which said overt acts consisted of the causing to be delivered to Leo A. Mergen at Beloit, Kansas, through the United States mails, * * * the various letters, envelopes, and communications set out in counts one to eighteen, inclusive."

Counsel for defendant contend that the court erred in overruling defendant's demurrer to the indictment. They assign three principal grounds: First, because each of the first eighteen counts referring to the letter set up therein alleged in the alternative "that said letter had theretofore been deposited, or caused to be deposited, by the said defendants in the United States mails at the United States post office at Kansas City, Missouri"; second, because it failed to sufficiently charge the scheme to defraud; third, because it alleged a scheme to obtain, not money or property, but credit.

[1] The allegations in the several counts of the indictment relative to the depositing of the several letters in the post office at Kansas City, Mo., is no part of the gravamen of the charge. Each count is adequate in law without such allegation. It alleges facts which are not necessary ingredients of the offense charged. It may be omitted without injurious effect to the material allegations of the charge. It is therefore surplusage. An indictment will not be held bad as in the disjunctive or alternative, where the alternative statement may be rejected as surplusage. Brady et al. v. U. S., No. 7788 (C. C. A. 8) 24 F.(2d) 397 (opinion filed January 3, 1928).

[2] While the formation of a scheme or artifice to defraud is an essential element of the offense defined in section 215, supra, the gist of the offense is the use of the mails for the purpose of executing or attempting to execute such scheme, and it is therefore sufficient to charge the scheme with such particularity as will enable the accused to know what is intended and to apprise him of what he will be required to meet on the trial. Horn v. U. S. (C. C. A. 8) 182 F. 721, 727; Brooks v. U. S. (C. C. A. 8) 146 F. 223, 227; Redmond v. U. S. (C. C. A. 1) 8 F.(2d) 24, 28; Foster v. U. S. (C. C. A. 6) 178 F. 165, 171. The scheme need not be pleaded with all the certainty as to time, place, and circumstance required in charging the gist of the offense. Savage v. U. S. (C. C. A. 8) 270 F. 14, 18; Gardner v. U. S. (C. C. A. 8) 230 F. 575, 578; McClendon v. U. S. (C. C. A. 8) 229 F. 523, 525; Brooks v. U. S., supra; Chew v. U. S. (C. C. A. 8) 9 F.(2d) 348, 351; Mathews v. U. S. (C. C. A. 8) 15 F.(2d) 139, 143.

[3] It is our opinion that counts 1 to 18, inclusive, each set forth the scheme with sufficient certainty to acquaint the defendant with the charge against him and to enable him to prepare his defense, and that they are sufficient under the rules above stated.

[4] The indictment clearly alleged that the purpose of the scheme was to defraud the Union National Bank by obtaining money and property.

We therefore conclude that the indictment was sufficient, and that the demurrer thereto was properly overruled.

[5] Counsel for defendant, Brady, contend that the proof was insufficient to support the verdicts of guilty, in that it failed to establish that the defendants caused the letters set up in counts 1 to 18, inclusive, to be delivered to Mergen at Beloit, Kan., through the United States mails by the United States post office at Beloit, Kan., and therefore failed to establish the gravamen of the charges based on section 215, supra, and the overt acts alleged in the conspiracy count.

The only evidence set out in the record is the testimony of the witness L. A. Mergen and copies of what purport to be the original letters set up in count 1 and counts 3 to 18, inclusive, of the indictment. Following Mergen's testimony, there is the following recital in the bill of exceptions:

"The above and foregoing including the letters introduced and set out in the indictment is all the testimony introduced by plaintiff tending in any way to show when, in what manner, and where the letters referred to and set forth in the indictment herein, or any or either of them, were delivered to or received by said witness Mergen."

The certificate of the trial judge certifies that the bill of exceptions contains a true, full, and complete statement of all of the evidence introduced by plaintiff, showing when, where, and in what manner the several letters referred to and set forth in the several counts of the indictment were delivered to and received by the addressee thereof, and as to how the envelopes in which said letters or any of them were inclosed, were addressed and directed, and all the evidence tending to show when, where and by whom said letters,

or any of them, were deposited or caused to be deposited in the post office.

The bill of exceptions discloses no evidence tending to show that the letter alleged in count 2 was ever received by Mergen.

The following is all the evidence on the point in question relative to the letter set out in count 1:

"My name is L. A. Mergen. I was elected cashier of the Union National Bank of Beloit, Kan., in 1910, and continued as such cashier till the bank closed in 1923, and during the year 1923 I was managing officer of said bank.

"Q. I hand you some papers which have been identified by the stenographer as Exhibit 7, * * * Exhibit 9, Exhibit 10. * * * I will ask you if these exhibits were a part of the books and records of the Union National Bank with regard to the transactions therein referred to? A. They were.

"Q. Now, I call your special attention to Exhibit 10. How did you receive that exhibit? A. Through the mail.

"Q. Within approximately a day or so of the date of the letter, Exhibit 10? A. Yes, sir.

"Q. I will ask you if that has special reference to the transaction shown by Exhibit 7 and Exhibit 9? A. Yes, sir.

"Mr. Skinner: We now offer in evidence Exhibit 10, which has been identified by this witness. (Plaintiff's Exhibit 10 so offered in evidence and read to the jury is the letter referred to and set forth in the first count of the indictment herein.)

"Q. Mr. Skinner: Mr. Mergen, prior to the receipt of Exhibits 10 and 7 through the mail, had you had any communication with W. S. McClintock, A. J. Baxter, or James E. Brady about this transaction by telephone, telegraph, or letter? A. I had a telephone communication or conversation with W. S. McClintock.

"Q. Will you please state what the conversation was and why it relates to Exhibit 7 and how it came into the bank? A. Mr. McClintock called me by telephone, asked if the bank would handle a certificate of deposit for him, and in a general way outlined the terms, and an agreement was reached; instructions were given to me as to how to handle the item.

"Q. I ask you to examine Plaintiff's Exhibit 8, and state in a general way if that was a part of the negotiations? A. It was.

"Mr. Skinner: We now offer in evidence and ask to read to the jury plaintiff's Exhibit 8.

"The Court: You may read it. (Plain-

tiff's said Exhibit 8, so offered in evidence and read to the jury, is a carbon copy of a letter dated February 7, 1923, from the witness Mergen, to defendant W. S. McClintock, but same is not mentioned nor set forth in the indictment herein.)

"Q. (By Mr. Skinner) You sent the original of that to Mr. McClintock? A. Yes, sir; and inclosed with it the draft which is shown as Exhibit 9.

"Q. And that draft was later paid by your bank? A. Paid by the Tootle-Lacy Bank.

"Q. You settled with the Tootle-Lacy Bank? A. Yes, sir."

We deem it unnecessary to set forth the proof relative to the mailing and receipt through the mails of the letters set out in the other counts of the indictment, because the proof as to such counts is less conclusive than the evidence above quoted relating to count 1.

[6] There is no direct evidence that defendants wrote the letters or that they deposited them in the post office directed to Mergen with postage prepaid, or that they otherwise caused them to be delivered to Mergen through the mails. The envelopes in which the letters were mailed are not in the record and apparently were not introduced in evidence. The genuineness of the purported signatures to the letters does not appear to have been directly established. The fact that the defendants caused such letters to be delivered to Mergen through the post office at Beloit, Kan., must be inferred, if at all, from the fact that the letters purport to have been written either by McClintock or by Brady, that the letters are addressed to Mergen at Beloit, Kan., and that Mergen testified he received such letters through the mail. To sustain the judgment, we must hold that the jury were warranted in presuming from this evidence, and this evidence alone: First, that the letters were inclosed in envelopes addressed to Mergen at Beloit, Kan.; second, that the defendants caused the letters to be duly stamped and mailed; and, third, that the post office at Beloit, Kan., received them and delivered them to Mergen. To do this, we would have to permit presumption to be built upon presumption. From the fact that the letters contained in themselves the address of L. A. Mergen, Beloit, Kan., the presumption would have to be drawn that they were enveloped, properly stamped, and addressed to Mergen at Beloit, Kan. From this presumption, the presumption would have to be raised that the defendant Brady caused them to be mailed, so addressed, and from the last presumption the presumption would

have to be drawn that the post office establishment delivered them at Beloit, Kan., to Mergen. It is well settled that presumptions cannot be based on presumptions. Vernon v. U. S. (C. C. A. 8) 146 F. 121, 126; 22 C. J. p. 84, § 27, page 99, § 40. We conclude that the evidence was insufficient to support the verdicts of guilty. See Freeman v. U. S. (C. C. A. 3) 20 F.(2d) 748.

Finally, counsel for defendant Brady contend that the offenses charged in counts 1 to 18, inclusive, of the indictment are identical with the offense charged in count 19 of the indictment, and that his prosecution, conviction, and sentence upon the several counts of the indictment as hereinbefore set out put him twice in jeopardy for the same offense, and violated the rights guaranteed to him by the Fifth Amendment to the Constitution of the United States, and because thereof that the judgments of conviction must be reversed, and that he cannot lawfully be prosecuted again upon any count of the indictment.

It will be observed that the scheme set forth in counts 1 to 18, inclusive, of the indictment is alleged to have been jointly devised by defendant Brady and two other defendants, and that it contemplated the unlawful use of the mails as defined in section 215, supra, in the execution of such scheme. It will be further observed that count 19 alleged that these same defendants did conspire and agree together in devising and intending to devise the scheme and artifice set forth and described in count 1 of the indictment, and that it further alleged as overt acts in furtherance of such conspiracy the causing to be delivered to Mergen at Beloit, Kan., through the United States mails, each of the letters set up in counts 1 to 18, inclusive. The devising of the scheme to defraud by the three defendants was itself a conspiracy, and was the same conspiracy alleged in count 19. The causing of the letters to be delivered in execution of the scheme to defraud were likewise the same overt acts charged in the conspiracy count.

[7] Such being the facts, are the offenses charged in counts 1 to 18 of the indictment identical with the offense charged in the nineteenth count? "The test is whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction; when there could, the second cannot be maintained; when there could not, it can be." Morgan v. Devine, 237 U. S. 632, 639, 35 S. Ct. 712, 714 (59 L. Ed. 1153); Manning v. U. S. (C. C. A. 8) 275 F. 29, 31; Braden v. U. S. (C. C. A. 8) 270 F. 441, 444; Tritico v. U. S. (C. C. A. 5) 4 F.(2d) 664.

Judge Denison, in a note to Hendrey et al. v. U. S. (C. C. A. 6) 233 F. 5, 7, said:

"The writer of this opinion notes that ordinarily there is no difficulty in conceiving the crime itself and the conspiracy to commit it, followed by some overt act, as two distinct offenses; but when we come to apply section 215 to the case of two or more respondents, and remember that a 'scheme' planned by two or more people is a 'conspiracy,' we find, from one aspect, a conspiracy which is to be followed by a particular overt act, else the conspiracy is not wrongful; and we find, from the other aspect, the identical act pursuant to the identical conspiracy. Could joint respondents be acquitted for this act pursuant to this conspiracy, and then be subject to conviction for the same conspiracy materialized by the same act? The District Court met this difficulty by arresting judgment on the third count; but a doubt must arise whether Congress ever intended R. S. § 5440 (Criminal Code, § 37 [18 USCA § 88]) to apply to a conspiracy to conspire, or to a conspiracy which was already specifically punished, if followed by a certain event, and which, unless to be followed by that very event, did not contemplate any offense against federal law. When and how far the crime of conspiracy survives the commission of the substantive crime is also suggested."

In Preeman v. U. S. (C. C. A. 7) 244 F. 1, 19, Judge Alschuler, in referring to the statement of Judge Denison, above quoted, said:

"If the act charged and proved as the only overt act under section 37 were the mailing of a letter, and the same letter only was charged and proved as the letter mailed in execution of a scheme to defraud alleged under section 215, it may well be that the mailing of the one letter, completing as it would an offense under section 37, and at the same time an offense under section 215, would not admit of the defendant's conviction and punishment under more than one charge, so proved; and such state of facts would well justify the doubts expressed by Judge Denison in the recent case of Hendrey v. United States, 147 C. C. A. 75, 233 F. 5."

We think it clear that, if the facts alleged in count 19 of the indictment, which, in effect, adopts the allegations of count 1 by reference had been proven under counts 1 to 18, inclusive, there could have been a conviction on each of counts 1 to 18 inclusive. Therefore, if the test above quoted is applicable, the offenses charged in counts 1 to 18 are identical with the offense charged in count 19. However, we must not be understood from the foregoing to express

the opinion that the offenses charged in counts 1 to 18, inclusive, are identical. Clearly they are not. We therefore doubt that a prosecution on count 19 could be maintained after jeopardy had attached in a prosecution on any of counts 1 to 18, inclusive, in the face of proper and timely objection thereto, but the difficulty here presented is that defendant Brady wholly failed to raise this question either before or after verdict in the court below.

[8] The constitutional immunity from second jeopardy is a personal privilege which the accused may waive. Levin v. U. S., 5 F. (2d) 598, 600, certiorari denied 269 U. S. 562, 46 S. Ct. 21, 70 L. Ed. 412; Ex parte Hall, 94 N. J. Eq. 108, 118 A. 347, 350–352; State v. White, 71 Kan. 356, 80 P. 589, 590, 6 Ann. Cas. 132; State v. Houghton, 45 Or. 110, 75 P. 887, 889; Blocher v. State, 177 Ind. 356, 98 N. E. 118, 120; Bosko v. People, 68 Colo. 256, 188 P. 743, 744; State ex rel. Stranahan v. District Court, 58 Mont. 684, 194 P. 308, 311; Jeter v. District Court, 87 Okl. 3, 206 P. 831, 832; White v. State, 23 Okl. Cr. 198, 214 P. 202, 205; Dunn v. State, 92 Tex. Cr. App. 126, 242 S. W. 1049, 1051, 1052; State v. Magnuson, 48 S. D. 112, 202 N. W. 638, 642; State v. Ford, 117 Kan. 735, 232 P. 1023, 1024; Territory v. Labato, 17 N. M. 666, 134 P. 222, L. R. A. 1917A, 1226; Reed v. State, 103 Ark. 391, 147 S. W. 76, 77, Ann. Cas. 1914B, 811; Gue v. City, 53 Or. 282, 100 P. 254, 256; State v. Barnes, 29 N. D. 164, 150 N. W. 557, 558–560, Ann. Cas. 1917C, 762.

[9] The waiver may be express or implied. Levin v. U. S., supra; State v. White, supra; Dunn v. State, supra; Reed v. State, supra.

[10] Ordinarily, the defense must be pleaded specially. U. S. v. Wilson, 7 Pet. 150, 159, 8 L. Ed. 640; U. S. v. Hopkins Co. (D. C. N. Y.) 228 F. 173; Territory v. Labato, supra; State v. Buzzell, 58 N. H. 257, 42 Am. Rep. 586; Wharton's Criminal Law (11 Ed.) vol. 1, p. 526.

[11] Waiver will be implied where the accused pleads not guilty and proceeds to trial, verdict, and judgment without raising the defense of former jeopardy. Levin v. U. S., supra; State v. White, supra; Norwood v. State, 3 Ga. App. 325, 59 S. E. 828; Bosko v. People, supra; White v. State, supra; Dunn v. State, supra; State v. Magnuson, supra; State v. Ford, supra; Terr. v. Labato, supra; Reed v. State, supra; State v. Barnes, supra.

[12] The defense cannot be raised for the first time by motion in arrest of judgment or by motion for a new trial, or on appeal. Levin v. U. S., supra; Ex parte Hall, supra; State v. Houghton, supra; White v. State, supra; People v. McGinnis, 234 Ill. 68, 84 N. E. 687, 691, 123 Am. St. Rep. 73; Dunn v. State, supra; State v. Houghton, supra; Dalton v. People, 224 Ill. 333, 79 N. E. 669, 671; State v. Ford, supra; Reed v. State, supra; Mooring v. State, 129 Ala. 66, 29 So. 664; People v. Bennett, 114 Cal. 56, 45 P. 1013, 1014; State v. Barnes, supra. See, also, 16 C. J. p. 285, §§ 489, 490; note L. R. A. 1917A, 1233.

We conclude that defendant impliedly waived the defense of former jeopardy by not seasonably and properly raising the same in the trial court, and that the question may not be presented here for the first time.

Whether the defendant might raise the question of excessive sentence for the first time in this court (see Braden v. U. S., supra; Tritico v. U. S., supra) we are not called upon to determine, because, as above indicated, the cause must be reversed on other grounds, and we assume, in view of what has been said above, the question will be obviated in the next trial of the case.

The judgment of conviction on counts 1, 2, 3, 4, 5, 6, 8, 9, 13, 14, 15, 17, and 19, is reversed, and the cause is remanded, with directions to grant the defendant, Brady, a new trial thereon.