## FREEMAN et al. v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
June 22, 1927.

Rehearing Denied August 23, 1927.

No. 3519.

**I. Post office** ⊘⊐49(11)—To convict of "using mails to defraud," proof must show scheme to defraud and use of mails in executing it (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution for "using mails to defraud," under Criminal Code, § 215 (Comp. St. § 10385), evidence must prove both scheme to defraud and use of mails in executing scheme, for, while genesis of crime is scheme to defraud, it is not complete till letter is placed in mail to execute scheme.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Defraud.]

**2. Post office** ⊘⊐49(11)—In prosecution for using mails to defraud, evidence held to show scheme to defraud by making incorrect statement of corporation's financial condition (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution for using mails to defraud, under Criminal Code, § 215 (Comp. St. § 10385), evidence *held* sufficient to show existence of scheme to defraud by making incorrect statement of corporation's financial condition, which was used for purpose of obtaining credit.

**3. Post office** ⊘⊐49(11)—In proving use of mails to defraud, it is unnecessary to prove that scheme to defraud was successful (Criminal Code, § 215 [Comp. St. § 10385]).

In proving crime of using mails in furtherance of scheme to defraud, under Criminal Code, § 215 (Comp. St. § 10385), it is not necessary to prove that scheme was successful.

**4. Criminal law** ⊘⊐323—That defendant mailed letter cannot be proved by presumption arising from postmark that envelope was mailed (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution, under Criminal Code, § 215. (Comp. St. § 10385), for using mails to defraud by false financial statement, that defendant mailed letter cannot be proved by presumption arising from postmark, under rule that postmark is prima facie evidence that envelope had been mailed since such evidence leaves unanswered question of who mailed it.

**5. Post office ⊕=49(11)—In prosecution for using mails to defraud by false financial statement, proof that defendant mailed letter may be circumstantial (Criminal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for using mails to defraud by false financial statement, evidence showing that defendant placed or caused to be placed letter in mails need not be direct, but may be circumstantial, either by evidence of acts or business custom of defendants.

**6. Post office ⊕=49(11)—In prosecution for using mails to defraud by mailing erroneous financial statement of corporation, evidence held insufficient to show that defendant mailed letter (Criminal Code, § 215 [Comp. St. § 10385]).**

Evidence introduced to show that defendant mailed letter *held* insufficient, in prosecution for using mails to defraud by mailing erroneous financial statement of corporation, to support conviction, under Criminal Code, § 215 (Comp. St. § 10385), notwithstanding that defendant signed statement contained in letter, and had been asked' for such statement a month before.

Buffington, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Maxwell A. Freeman and others were convicted of using the mails to execute a scheme to defraud, in violation of Criminal Code, § 215, and they bring error. Reversed, with directions.

Frederic M. P. Pearse and Daniel W. Applegate, both of Newark, N. J., for plaintiffs in error.

Harlan Besson, Asst. U. S. Atty., of Hoboken, N. J.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Rosin, Paskow and Freeman, stockholders, directors and officers of a corporation bearing their names, were tried and convicted under an indictment which contained three counts, charging them in different details with the offense of using the United States mails for the purpose of executing a scheme to defraud, in violation of section 215 of the Criminal Code (Comp. St. § 10385). The counts conform with the statute and contain allegations of the two essentials of the crime: First, a scheme to defraud; and, second, use of the United States mails in executing the scheme. Both phases are here for review on the defendants' writ of error.

[1] The questions raised by the many general and the few specific assignments of error (and raised by no assignments at all) mainly relate to the presence and sufficiency of evidence to sustain these allegations. Of course, both must be proved; evidence that would sustain one without evidence that would sustain the other would not sustain the conviction.

The genesis of the crime is a scheme to defraud. Standing alone that is not a federal offense. The crime is complete when those involved in such a scheme, or when one of them with the knowledge or acquiescence of the others, place or cause to be placed a letter in the United States mail with the purpose of executing the scheme. As an offense with several elements must be begun before it can be ended, our first inquiry is directed to the evidence of a scheme to defraud.

[2] In February, 1920, an inventory and statement of the corporation's financial condition was prepared. It was manifestly incorrect in that it showed the company solvent with a surplus of about $63,000, when, in truth, it was insolvent in an amount approximating $32,000, notwithstanding an understatement of assets by about $18,000. In June, following, this statement was received through the mails by Lyon Furniture Mercantile Agency, R. G. Dun & Co. and Heywood Brothers & Wakefield Company. Its substance was disseminated by the former two commercial agencies and availed of by certain of their subscribers and by the last named company for purposes (as it was testified) of extending credit. Curiously enough, the record contains no evidence that, before or at the time of the preparation of the statement in February, or prior to its receipt by the named concerns in June, these defendants planned together or evolved a scheme to defraud the company's creditors. The evidence of such a scheme is to be found only in occurrences which followed. These comprise the effect of the mis-statements of assets and liabilities in the company's financial statement in inducing extensions of credit, and in causing rather small losses out of an aggregate of about $280,000, later appearing in the bankruptcy proceeding, sustained by a few wholesalers or manufacturers, who testified they extended credit on their faith in the statement.

[3] Of course, in proving the crime of using the mails in furtherance of a scheme to defraud, it is not necessary to prove that the scheme was successful, Bettman v. United States (C. C. A.) 224 F. 819, 830; it is enough to prove that the parties devised or intended to devise such a scheme. On this

issue we find the evidence meager, yet, we think, sufficient to prove this element of the offense. Coincident with the giving out of its false financial statement, there is evidence that the company surreptitiously delivered goods of the value of about $20,000 to a neighboring firm. Whether this was done to secure an antecedent loan of $18,000, as the defendants maintain, or as a part of their scheme to defraud, as the Government contends, was an issue of fact which entered or dropped out of the scheme according as the jury should find one or the other. On this branch of the case, and on all others save one, we resolve all assignments of error against the plaintiffs in error.

[4, 5] The basic element of the offense is the placing of a letter in the United States mail for the purpose of executing such a scheme. That is what makes it a federal offense. It is defined in the statute, must be alleged in the indictment, and must be proved. How? The Government says that it may be proved by the presumption arising from the postmark, 22 Corpus Juris 99, or, under the general rule that a postmark is prima facie evidence, that the envelope had been mailed, 21 R. C. L. 763; United States v. Noelke (C. C.) 1 F. 426. That, concededly, is the rule in civil cases; but it leaves unanswered the question —vital in criminal cases—who mailed it? The statute imputes the crime to "whoever * * * shall * * * place or cause to be placed any letter in the mails, * * *" and the indictment here charged that the three defendants did that thing. That charge, we hold, must be proved by evidence. The evidence need not be direct; that is, it need not be that the defendants were seen mailing the letter; it may be circumstantial, that is, evidence of acts or doings, or business custom of the defendants, from which their act of mailing or their act which caused the letter to be mailed may reasonably and lawfully be inferred. There are many cases of this kind, United States v. Bebout (D. C.) 28 F. 522; Demolli v. United States (C. C. A.) 144 F. 363, 6 L. R. A. (N. S.) 424, 7 Ann. Cas. 121; Bettman v. United States (C. C. A.) 224 F. 819; Underwood v. United States (C. C. A.) 267 F. 412; Dysart v. United States (C. C. A.) 4 F.(2d) 765; Levinson v. United States (C. C. A.) 5 F.(2d) 567; Baker v. United States (C. C. A.) 10 F.(2d) 60; but in each case there is some act or group of acts on which the fact that the accused mailed the letter or caused it to be mailed can be hinged.

[6] No case has been called to our attention and none has been discovered by our independent research where conviction has been sustained when there is no evidence, direct or circumstantial, that the accused mailed the letter. In the case at bar there is ample evidence of the receipt of the three letters through the mail, but the only circumstance that connects Freeman with mailing them, or any of them, is that the enclosures bore his signature and that a month or more before the letters were received Freeman had, in one instance, been asked for a statement of his company. The date of the request is too remote from the date of the receipt of the letter to connect the two. Moreover, we think the fact that Freeman signed the statement is not proof that he mailed it. As to Rosin and Paskow, there is no evidence connecting them with mailing the statement other than it was written on their company's stationery and enclosed in the company's envelope.

On this issue, we are constrained to reverse the judgment as to the three defendants and direct that they be given a new trial in harmony with this opinion.

BUFFINGTON, Circuit Judge. So far as Maxwell A. Freeman is concerned, I am constrained by the evidence I now quote to record my dissent. Freeman was president of Rosin, Paskow & Freeman, a firm doing business in Newark, New Jersey. It had ordered goods from Heywood Bros. & Wakefield Company of New York City, before the middle of May, 1921, but shipment of such order was delayed, due to the unsatisfactory condition of their account. About the middle of May, Freeman, who was president of the firm, came to the office of the Heywood firm in New York to straighten out the matter and there talked with McQuade, credit manager of the latter, with the result that Freeman was asked for a financial statement and agreed to give one. With reference to this statement, the testimony of McQuade, which was not contradicted by Freeman, as to the alleged fraudulent statement was:

"Q. Had you made any request for a statement of that kind of anybody before you received that? A. Yes, sir.

"Q. From whom? A. From Mr. Freeman.

"Q. Are you personally acquainted with Mr. Freeman? A. Yes, sir.

"Q. Can you point him out among these gentlemen? A. Yes, sir; the gentleman in the center of those three.

"Q. Has Maxwell A. Freeman ever been..

to the office of Heywood-Wakefield . Company? A. Yes, sir.

"Q. When? A. I believe it was the middle of May, in 1921.

"Q. Did you have any discussion that in any way related to that statement? A. Yes, sir.

"Q. Will you state exactly what was said by you and what was said by Mr. Freeman? A. Well, it came about by my holding up an order for shipment owing to an unsatisfactory condition of the account, and Mr. Freeman called to straighten the matter out, and — * * *

"Q. Well, what did he say with reference to a statement? A. I asked for a statement and he agreed to give me one."

In pursuance of this talk, McQuade then and there gave Freeman a printed blank form on which to furnish the statement. In that regard the testimony of McQuade is:

"Q. Well, what did he say with reference to a statement? A. I asked for a statement, and he agreed to give me one.

"Q. I see. A. I gave him a blank form.

"Q. And is that the form— A. That is the form.

"Q. —that appears as a part of Exhibit G–8? A. Yes, sir.

"Q. Or G–8 for identification? A. Yes, sir."

An examination of the paper, Exhibit G–8, itself, thus identified by McQuade, shows that the proposed statement was not a general disassociated credit blank, but was a paper issued by and in the name of Heywood Bros. & Wakefield Company, and to be made to them "for the purpose of obtaining credit, the following is given you as a true statement of my or our assets and liabilities and general financial condition." The paper is of a stiffened linen type and is made with a watermark. The proofs show that this blank, with the fraudulent statement of the firm's assets, was filled in by the bookkeeper of the firm and signed in Freeman's proven and uncontradicted signature, "Maxwell A. Freeman, Pres." This blank was next seen by McQuade when he opened the mail of his firm on June 15th, and found it inclosed in a sealed envelope, on which envelope was printed the name "Rosin, Paskow & Freeman, Inc., 101 Branford Place, Newark, N. J." The envelope bore the postmark "Newark, N. J.," and the date "June 15," and had a canceled postage stamp and was addressed "Heywood Bros. & Wakefield Company, 516 West Thirty-Fourth St., New York City."

McQuade's testimony in that respect is as follows:

"Q. Now, I show you a paper annexed to an envelope with a canceled postage stamp on there and a postmark of Newark, which I ask to have marked G–8 for identification. (Received and marked 'Exhibit G–8' for identification.)

"Q. When did you first see G–8 for identification? A. On June 15, 1921.

"Q. And where did you see it, and what way did you get it? A. I requested it from Rosin, Paskow & Freeman."

Following this statement shipment of goods was made on June 21; McQuade's testimony being:

"Q. After you received this form, did you make any shipment to them? A. Yes, sir.

"Q. What, if anything, did you ship? A. We shipped some reed furniture on June 21st, amounting to $177.48."

Here, then, we have testimony tending to prove a firm whose ordered goods were held up by the unsatisfactory state of its account, a request for a statement, agreement by its president to furnish the same, and a blank furnished on which the statement was to be made. Next we have the fraudulent statement made on this blank by the bookkeeper of the firm and signed by the firm's president. Next we have the paper sealed in an envelope of the firm, deposited in the post office where the firm was located, and directed to the company which had asked for the statement. Next the shipment of goods after the fraudulent statement was received. That a fraudulent use of the mails was successfully made is clear. Is there proof who did it? Now, there is an utter absence of proof or even suggestion that any other persons save this firm, or its three members, Freeman, Rosin or Paskow, had any interest or part in the matter, and there is no proof to connect either Rosin or Paskow with the statement. The elimination of these two men and the noninterest or participation of outside parties narrows the situation to Freeman, and as the blank form was given him, as he promised to make the statement, as he signed it after the fraudulent figures were inserted by the firm's bookkeeper, I am of opinion that these proofs were, so far as Freeman is concerned, properly received in evidence, and that the court below committed no error in submitting them to the jury.

In view of the fact that the mails were fraudulently used, I think the proofs were such that a jury could fairly infer that Freeman either placed, or caused to be placed, "Exhibit G–8" in the mails.