## ROSS v. UNITED STATES.
### No. 8856.

Circuit Court of Appeals, Ninth Circuit.
April 14, 1939.

R. M. Crookshank, of Santa Ana, Cal., and Russell Graham, of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Norman W. Neukom, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant was convicted by a jury in the United States District Court of the Southern District of California, Central Division, upon the first four counts, and was found not guilty upon the last two counts of a grand jury indictment dated March 23, 1939, charging him in seven separate counts (Case No. 1346–RJ) with having violated 18 U.S.C.A. § 334. Count six of this indictment was abandoned by the Government during the trial and was dismissed by the Court. Prior to the taking of testimony at the trial appellant entered a plea of for- mer acquittal, which was denied and exception was reserved. Upon the conclusion of taking testimony on behalf of the Government at the trial the defendant, Ross, appellant here, made a motion, which was denied, that the jury be directed to find him not guilty on the ground of insufficient evidence to warrant conviction (not assigned as error) and upon the ground that the defendant had been put in former jeopardy. Judgment was entered in accordance with the verdict, sentence was pronounced, and this is an appeal from the judgment. Appellant relies upon five assignments of error.

Prior to the filing of the indictment in the instant case an indictment had been returned against appellant in the same jurisdiction. Trial had been had thereon and appellant had been acquitted. It is because of trial upon the third count of this first indictment that appellant claims double jeopardy.[1]

Stripped of formalities, count three of the first indictment is as follows: "That * * * the defendant * * * on or about the 30th day of December, 1937 * * * did knowingly, wilfully, unlawfully and feloniously take and receive from a post office of the United States * * * a certain letter addressed to a fictitious, false and assumed name, and a name other than his own proper name, that is to say, the name Lucille Ross, which said name the defendant had theretofore, for the purpose of conducting, promoting and carrying on by means of the Post Office establishment of the United States an unlawful business, to-wit, the distribution by mailing of obscene, indecent filthy and lascivious writings and pictures, assumed and requested to be addressed by."

This count is laid under 18 U.S.C.A. § 339, which is as follows: "§ 339. Whoever, for the purpose of conducting, promoting, or carrying on, in any manner, by means of the post office establishment of the United States, any scheme or device mentioned in the section last preceding or any other unlawful business whatsoever, shall use or assume, or request to be addressed by, any fictitious, false, or assumed title, name, or address, or name other than his own proper name, or shall take or receive from any post office of the United States, or station thereof, or any other authorized depository of mail matter, any letter, postal card, pack-

---

[1] We have nothing before us relating to the first case but the indictment and the verdict.

103 F.2d—38½

age, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be punished as provided in section 338 of this title."

Each count of the indictment in the case here upon appeal charges a specific act of mailing an obscene picture, sketch or writing, and each is laid under the provisions of 18 U.S.C.A. § 334. Each alleged mailing was fixed in the indictment as having occurred prior in time to the trial upon the former indictment. We quote the essential parts of the statute last cited: "§ 334. Every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character * * * and every letter, packet or package, or other mail-matter containing any filthy, vile, or indecent thing, device, or substance * * * is hereby declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. Whoever shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable, or shall knowingly take, or cause the same to be taken, from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000; or imprisoned not more than five years, or both. * * *".

This statute in short denounces as nonmailable "every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character"; while section 339 denounces every use of the mails for assisting in any unlawful business by the use of any false fictitious or assumed name, title or address.

It is the theory of appellant that count three of the first indictment charges a continuing offense, to-wit, the conducting of an unlawful business and that conducting a business is by its nature a continuing act. From this premise he argues that the acts charged in the second indictment were necessarily essential parts of the charges upon which he was acquitted in the first trial, and that double jeopardy therefore resulted by trying him under the second indictment. Appellant relies largely upon the cases of Cain v. United States, 8 Cir., 19 F. 2d 472; In re Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118, and In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658.

It is our opinion that appellant has incorrectly read the quoted count of the first indictment, and that his error has led him to wrong conclusions. The only allegation in count three of the first indictment as to any act done by him is that he took and received from the Post Office a certain letter. This taking and receiving is not alleged to have been unlawful because the letter was obscene, lewd or lascivious—indeed it is not alleged to have been such. The unlawfulness arises from the alleged facts that the letter was received from the mail and was addressed to a fictitious name assumed by the defendant, and that its purpose was the furtherance of the unlawful business named in the indictment.

It seems perfectly obvious that the mere fact that appellant had been acquitted of taking or receiving from the mails the one alleged letter referred to in the first indictment does not at all negative the allegations that he had used the mails as charged in the second indictment. It does not even negative all of the essentials of the first indictment, although appellant apparently assumes as much, including the allegation that he was conducting the unlawful business.

There is no conflict between or overlapping of Sections 334 and 339. They complement each other in the Government's effort to stop the use of mails in connection with a depraved practice of those who immerse their mentalities in slimy pools of obscenity. The first prohibits the use of the mails in connection with the indecent thing itself. The second excludes from the mails any use of fictitious names and addresses by one conducting the unlawful business or one dealing with him in connection with the unlawful business.

Appellant has not only incorrectly read the third count of the first indictment but has misread the statute used as the basis thereof, and he has misconceived the law applicable to double jeopardy. Of course it is not always true, as is so unconditionally asserted by him, that if any one essential element of an offense upon which a defendant is put to trial is also an essential element of another alleged offense, that the jeopardy rule applies to prevent a trial upon the latter one. The rule is almost if not quite the converse. The Supreme Court said in Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 715, 59 L.Ed. 1153, "As to the contention of double jeopardy upon which the petition of habeas corpus is rested in

this case, this court has settled that the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes."

Bishop's statement (Bishop's Criminal Law, Vol. 1 § 1051) to the effect that jeopardy is not the same when the two indictments are so diverse as to preclude the same evidence from sustaining both, has been approved in principle in Brady v. United States, 8 Cir., 1928, 24 F.2d 399, 404; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; and Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; and by this court in King v. United States, 9 Cir., 31 F.2d 17, affirmed in 280 U.S. 521, 50 S.Ct. 65, 74 L.Ed. 590. Our opinion in the King case cites the controlling authorities and they need not be repeated here. It may be well to add, however, that we specifically declined to follow Cain v. United States, supra. In view of the later expressions of the Supreme Court cases cited by us in the King Case, we do not deem it of any service to discuss earlier cases relied on by appellant. The plea of double jeopardy in this case is not good.

In the consideration of the other assignments it will be necessary to recite much of the evidence.

There is evidence in the case to the effect that Ross was an official Court Reporter of the California Superior Court for the period of several years and served as such up to the time of the trial, or nearly so. He appears to have rented a post office box, No. 542, at Santa Ana, Orange County, California, and retained it from February, 1934, to within a month of the trial.

The evidence shows without contradiction that on December 30, 1937, L. E. Miller and H. W. Tavener, Post Office Inspectors, intercepted appellant as he took two letters from Box 542 at Santa Ana. One had been mailed at Ventura, California, and the other one at New York City. At first Ross said the letters were for some woman to whom he had been forwarding letters, but later he turned the two letters over to the Inspectors saying, "Well, you have got me, I might as well tell you about it, and I might as well open the letters". He admitted he was "Lucille" Ross. At Ross' invitation the Inspectors went with Ross to his home where he handed them some obscene pictures and literature. Thereafter Ross voluntarily gave the following signed statement under oath: "I, Lecil E. Ross, being first duly sworn, depose and say that I live at 843 No. Ross Street, Santa Ana, California, and that on Feb. 19, 1934, I rented a post-office box No. 542 at the Santa Ana, California, postoffice and have used that box continuously since that time. In the use of this lock box I have carried on a salacious correspondence with various persons throughout the United States. Much of this correspondence has been carried on by me under the name of Miss Lucille Ross. I have received through this stated lock box No. 542 a number of obscene letters and letters containing obscene pictures and sketches. I have also mailed a number of obscene letters and pictures to various persons throughout the United States, using the name Lucille Ross. I have drawn a number of sketches or pictures of nude young women engaging in immoral and degenerate practices and have mailed them to various persons. I do not think that I mailed more than 50 of these pictures. I drew the pictures and sent them to Mr. O. B. Hertwig at Reedley, California, who photographed them and returned the photographs of these obscene sketches to me by railway express from Reedley, California, to Santa Ana, California. I have not, positively not, been in this business in a commercial way and have never sold any of my obscene pictures or sketches. I have been corresponding with a person at Ventura, California, known to me as Miss Dorothy Jones, 324 Anacapa Street, and I have sent this person some obscene letters and one picture. I have also received this date an obscene letter and picture from this person through the post-office lock box No. 542, at Santa Ana, California, which was mailed at Ventura, California, November 19, 1937, the correspondence enclosed being signed 'Dot'. I also received today from this same post-office lock box at Santa Ana, California, No. 542 a letter mailed at New York, New York, November 23, 1937, with the return address P. Meyer, 946 Sherman Avenue, Bronx, New York, New York. This letter, bearing six cents in postage, contained three obscene pictures and an obscene letter. I had corresponded with this person on previous occasions and sent her some obscene pictures and letters. The letter was signed 'Peggy'. I have initialed the pictures and letters here described. I

am making this statement voluntarily, without any promises or threats having been made me and without any coercion, and realize it may be used against me. I want to do the right thing and get this matter settled the best way I can. I am sorry that I have ever engaged in these practices. I want to say that I will cooperate with the postoffice inspectors to the fullest exent in this matter. I have tried to secure these obscene pictures for the purpose only of showing them at stag parties on my boat."

■ Appellant offered to prove that part of the signed statement was false, to-wit, that part reading, "I have tried to secure these obscene pictures for the purpose only of showing them at stag parties on my boat". To do so he offered witnesses to testify that he never had shown obscene pictures on his boat. Such testimony would in no wise impeach the part of the statement he sought to show was false. More than that, the securing of "obscene pictures for the purpose only of showing them at

stag parties on my boat" even if true would have no materiality. The court correctly rejected the offer.

There was testimony from a Santa Ana postoffice clerk that she had placed more than one letter addressed to Lucille Ross in Box 542, and that she knew no one other than Ross who received mail addressed to Lucille Ross at Box 542. Another clerk testified that he knew Lecil E. Ross, and that he had placed letters in Box 542 addressed to Lucille Ross. Another clerk testified that there is a regular mail carrier serving the residence address of appellant; and that he has seen appellant take mail from Box 542.

In order to assist in the orderly understanding of the exhibits, most of which are stipulated to be too obscene and lewd to be set out in the transcript, the parties entered into a stipulation briefly describing the exhibits. Such description is set out in the margin, [2] together with reference to other

[2] Description of Exhibits.

Exhibit 1—Application for post-office box, dated February 19, 1934, for Box 542, filled in portion all in purple ink.

Exhibit 2—Order to change address for Box 542, pink card signed by L. E. Ross.

Exhibit 3—Three documents which on the reverse side are termed "Bill of ——— for Shorthand Reporter", official form for County of Orange, segregated in instruments: A, dated December 31, 1937; B, dated December 31, 1937; and C, dated February 7, 1938. Most of the filled in portions are in purple ink and purport to bear the signature of L. E. Ross.

(Exhibits 1, 2 and 3 each came into evidence without objection and under competent testimony that they contained handwriting of Ross. They were used as examples of Ross' handwriting.)

Exhibit 4—A one page instrument in affidavit form captioned at Santa Ana, California, December 30, 1937, signed by L. E. Ross, witnessed by H. W. Tavener and L. E. Miller.

(Signature used as an exemplar of Ross' handwriting.)

Exhibit 5—An envelope bearing three 3 cent cancelled stamps, postmarked Santa Ana, California, October 15, 1937, addressed to Miss Dorothy Jones, 324 South Anacapa Street, Ventura, California, bearing the return address: P. O. Box 542, Santa Ana, California. (This envelope was received through the mail by Stanley C. Jones, according to his testimony.)

Exhibit 5-A—A two page typewritten

letter bearing typing on both front and reverse sides, addressed: "My dear Dot", Tuesday, signed in typing "Lucille".

(Jones testified that this exhibit was enclosed in Exhibit 5. It is vile and obscene.)

Exhibit 5-B—Twelve immoral sketches of women and one booklet in orange cover, being an obscene cartoon termed: "Toots and Caspar and Uncle Abner."

(Jones testified that these were also enclosed in Exhibit 5. Unspeakably vile and obscene.)

Exhibit 6—An envelope bearing two 3 cent cancelled stamps, post-marked Santa Ana, California, November 3, 1937, addressed to Miss Dorothy Jones, 324 South Anacapa Street, Ventura, California, bearing the return address: P. O. Box 542, Santa Ana, California.

(This envelope was received through the mail by Stanley C. Jones, according to his testimony.)

Exhibit 6-A—A three page entirely typewritten letter addressed to "My dear Dorothy", Friday, written on both sides of all the sheets, signed "Lucille".

(Jones testified that this exhibit was enclosed in Exhibit 6. It is vile and obscene.)

Exhibit 6-B—Seven obscene sketches.

(Jones testified that these were also enclosed in Exhibit 6. They are vile and obscene.)

Exhibit 7—A large manila envelope bearing 21 cents in canceled stamps, postmarked Santa Ana, California, May 27, 1935, addressed in purple ink to Mr.

testimony relating to them. The exhibit numbers are carried throughout the opinion in parenthesis for the purpose of ready identification by reference to the marginal note.

The first count of the indictment alleges that on October 15th, 1937, appellant mailed to Miss Dorothy Jones, Ventura, California, an envelope containing an obscene letter; and twelve obscene and lewd pictures, one filthy and lewd booklet and one filthy and lewd sketch. Stanley C. Jones, who had served six months in jail for mailing two obscene letters, testified that he lived at 324, South Anacapa Street, Ventura, California; that around October, 1937, he was receiving mail at that address under the name of "Miss Dorothy Jones" and received an obscene letter which was wholly typewritten (5-A). It was contained in the envelope introduced (5). The address on the envelope was typewritten, as was the return address of P. O. Box 542, Santa Ana, California. The envelope was postmarked Santa Ana, Calif. Oct. 15, 1937. The letter (5-A) was signed "Lucille" in typewriting. The envelope also contained obscene pictures and an obscene booklet (5-B). The defendant was convicted upon this count.

The second count alleges that an envelope containing a letter, four pictures and one sketch, all obscene, was mailed to Dorothy Jones on November 3rd, 1937, by appellant. The defendant was convicted upon this count. As to this count appellant says in his opening brief, "The evidence to support count 2 of the indictment was precisely the same as that introduced to support count 1 with the exception that the envelope was postmarked Santa Ana, Calif. November 3, 1937". We accept this as an accurate statement (Exhibits 6, 6-A and 6-B.)

The fifth count alleges that an envelope containing an obscene letter addressed to Mrs. Paula Sykora, was mailed in January, 1936, by defendant. Defendant was acquitted upon this count.

The sixth count was dismissed.

Count seven is that an envelope containing an obscene letter addressed to Mrs. Paula Sykora, was mailed in January, 1936, by defendant. Defendant was acquitted upon this count.

Paul Sykora, a witness for the Government, testified that he noticed advertisements inviting correspondence; that he answered them from Kansas City and received in return two letters (10 and 11) in envelopes postmarked Santa Ana, Calif., bearing the return address Box 542, Santa Ana, Calif. He destroyed the envelopes. One of the letters (10) consisted of one sheet, typewritten on both sides, addressed to "My dear Paula", and signed in type "Lucille". The other letter (11) can be described in the same manner, except that it consisted of six pages. Both were obscene in the extreme. The witness had

---

O. B. Hertwig, P. O. Box 261, Reedley, California, bearing the return address: Box 542, Santa Ana, California.

(Hertwig testified that this envelope was received through the mail by him and that it contained sketches "similar" to Exhibit 7-A.)

Exhibit 7-A—An obscene sketch.

(The witness would not testify that this exhibit was enclosed in Exhibit 7.)

Exhibit 8—A two page letter written in pencil, the writing appearing on both sides of each sheet, addressed to "Dear Unknown Lady", Santa Ana, California, 7-21-35, signed L. E. Ross, P. O. Box 542, Santa Ana, California.

(Hertwig testified that this came to him through the mail. This letter is vile and obscene.)

Exhibit 9—A booklet termed "Friends of Montmarte". All except the first page has been sealed. The page open to inspection is all in typing.

(The Post Office Inspector testified that Ross said he "prepared" it. Used as exemplar of typewriting. It is vile and obscene.)

Exhibit 10—A one page typewritten letter, bearing typing on both sides of the sheet, addressed to "My dear Paula", Wednesday, signed in type "Lucille."

Exhibit 11—A six page typed letter, bearing typing on both sides of the sheets, addressed to "My dear Paula", signed "Lucille" in typing.

(The Government's witness Sykora testified that he received Exhibits 10 and 11 through the mail.)

Exhibit 12—(For identification only.) A four page entirely typewritten letter bearing typing on both sides of the first three pages, addressed to "My dear Paula", bearing the name "Lucille" as signature, in typing, on the reverse side of the third page.

(Exhibits 10, 11 and 12 Id. are vile and obscene. Exhibit 9 was used as exemplar, and Sellers testified that they were all written on the same typewriter.)

Exhibit 13—A group of seventeen obscene photos and sketches.

requested to be addressed as Mrs. Paula Sykora.

Practically the same situation exists as to errors assigned regarding these four counts (one, two, five and seven), and they are treated together in appellant's brief. We shall do the same.

In addition to the evidence above recited, Mr. Clark J. Sellers, an eminent handwriting and typewriting expert was called by the Government. He used as an exemplar of typewriting a booklet relating in detail unnatural sex practices in a lascivious manner, entitled "Friends of Montmarte" (9). He testified that all of the exhibits relating to these four counts (one, two, five and seven) and the booklet were written on the same typewriter. See Underhill's Criminal Evidence § 748, p. 463. The two Postoffice Inspectors testified that they saw a typewriter in Ross' room and that appellant told them that he prepared "Friends of Montmarte". One of the Postoffice Inspectors testified as follows: "My recollection is that Mr. Ross told Inspector Tavener that that was a typewriter he used. I did not hear him say that he used it to type this particular pamphlet, but that he used a typewriter, that he used a typewriter in that room."

The exhibits were offered and received over the appellant's objection that no sufficient foundation had been laid for the introduction of either of them.

█ It is argued that inference has been made upon inference. We think not. Here are factual circumstances, which joined with other circumstances,[3] viz., the testimony that the envelopes were sent through the mails and contained appellant's box number as the return address; the testimony that he had been using the name of "Lucille" through his Postoffice box; together with his signed statement, justify the inference that Ross wrote and that he sent the exhibits. The subject of inference upon inference was treated rather extensively in the case of People v. Graves, 137 Cal. App. 1, 29 P.2d 807, 30 P.2d 508. We quote from the opinion (137 Cal.App. page 14, 29 P.2d page 813): "Courts have sometimes used the expression that an inference cannot be based upon an inference and appellant has sought to apply this principle as a reason for rejecting the evidence under consideration. In the first place, the ex-pression itself is far from an accurate one. Just as the language we speak is said to be made up of dead metaphors, so our ordinary statements as to facts are really made up of dead inferences. These inferences are so intimately associated with known or obvious facts that we habitually accept them as facts. Wigmore, at section 41, volume 1, of his treatise on evidence says flatly, 'There is no such rule, nor can be.'" No error was committed in admitting these exhibits.

Count three charges that Ross mailed an envelope containing obscene sketches addressed to O. B. Hertwig, and count four charges that he mailed an envelope containing an obscene letter addressed to O. B. Hertwig. Conviction was had upon both of these counts.

Hertwig was offered as a witness for the Government, and testified that he knew appellant and had corresponded with him for around three years; that an envelope shown him (7) contained some sketches; that he received the letter (8) shown him but that he had destroyed the envelope in which it was received. Ross, upon cross-examination, elicited the following testimony from the witness, "I cannot truthfully say whether or not this particular picture (7-A) was in the envelope (7) when I received it. While I do not know whether this particular picture (7-A) was in this envelope (7), there were pictures similar to it in the envelope, that is, longhand sketches of the same nature."

█ It will be seen that there is nothing definitely connecting the envelope (7) with anything obscene, unless the picture (7-A) does so. The witness did not say that he believed it was the picture contained in the envelope, but only that it was of the same general nature. The witness was not asked to describe the sketches he found in the envelope. He does not anywhere even say that they were "off color" morally. That they were, can only be deduced from visualizing the sketch used by the Government. In this state of the evidence we do not think the sketch is entitled to be introduced and used as a sort of exemplar of all the sketches contained in the envelope. The absence of these sketches at the trial and whence came the one used is nowhere established in the evidence. It seems to us that the introduction of this picture was error, and as count three depends upon this

---

[3] See, Brady v. United States, 8 Cir., 24 F.2d 399; Freeman v. United States, 3 Cir., 20 F.2d 748.

evidence for support of the conviction, it must be reversed. See, Wigmore on Evidence, 2nd Ed. §§ 789 and 790, pp. 88 et seq; § 1179, p. 730; and §§ 1181 and 1182, beginning at p. 781. In this ruling we are not overlooking the reference to pictures in the signed statement. The pictures therein mentioned are not definitely tied in with Exhibit 7 or 7-A, or with Exhibit 13, which is shortly to be considered. In view of the other evidence applicable to the other counts, however, we hold that it could not have prejudiced the jury as to their determination thereon. The pictures, sketches and letters properly received in evidence are so extreme and certain in their depiction of the lowest moral degeneracy that more of the same degree of filth—they could not have been of greater degree—could not have influenced the jury. See 28 U.S.C.A. § 391; Williams v. United States, 8 Cir., 265 F. 625. One more sketch could hardly have added to the nastiness of the revolting mess. The witness testified that the lewd letter (8) was received by him through the mail.

A careful reading of the testimony regarding and the objection to the introduction of the pictures (13) leaves a very great question as to whether Ross' objection covered them. The objection is phrased wholly as to "letters". However, since Ross was acting in propria persona, we are inclined to be liberal and we shall "stretch a point" to hold that the pictures (13) came within the objection. This is not unreasonable because if mailed at all, the pictures were mailed enclosed with the "letters" referred to by Ross. No envelope was produced. Again the witness would not commit himself as to the identical pictures, and we think they should not have been received in the circumstances. These pictures do not respond to any particular count of the indictment, but their reception into evidence was erroneous. For the reason as already expressed concerning Exhibit 7-A, we think their admission into evidence could not have prejudiced the jury in considering appellant's guilt or innocence of any of the charges in the indictment.

Ross sought to establish through cross-examination that the witness Hertwig had sent a woman and a man to call upon him, ostensibly to sell books, but actually for the purpose of extorting money from him. In arguing to the court he said, "His pals and he (Hertwig) sent those people to Santa Ana to play the badger game on me.

I resisted their efforts to extort money and afterwards he threatened me. And now you see him on the stand testifying against me. I offer to prove all this."

He made no further offer of proof. The court declined to permit any such proof, and Ross claims such ruling to be erroneous. The Government confesses error, and we accept such confession without ruling thereon.

We do not, however, regard the error as calling for a reversal of the conviction under count four or seriously affecting any of the other counts. Ross in his signed statement asserts that he had mailed lewd letters to various persons and that he had sent obscene sketches to Hertwig. The letter (8) was positively identified by Sellers as Ross' handwriting. The witness Hertwig had testified that he had been convicted of a felony and was then under sentence to the county jail. The jury had quite enough to put them on their guard as to Hertwig's testimony, and yet they believed him. We can not believe that the further testimony regarding this "badger game" would have had any considerable effect upon them. We have already adequately treated the subject of error not affecting the judgment.

Appellant's assignment of error number 4 referring to Exhibits 5, 5-A, 6, 6-A, 6-B and 9; and assignment of error number 5 referring to Exhibits 10 and 11, are based upon the contention that said exhibits were admitted "without competent evidence that appellant had mailed them". We think this opinion would not be improved with a recitation of the circumstances upon which the jury could well have found, as it did do, that Ross was instrumental in the use of the mails in relation to these exhibits. That direct evidence of mailing by Ross is not necessary, see Dysart v. United States, 5 Cir., 1925, 4 F.2d 765; Levinson v. United States, 6 Cir., 1925, 5 F.2d 567; Baker v. United States, 6 Cir., 1926, 10 F.2d 60. Appellant cites Brady v. United States, 8 Cir., 24 F.2d 399, and Freeman v. United States, 3 Cir., 20 F.2d 748, to support his contention that there is no substantial proof that he mailed certain exhibits. We do not follow his argument, for an examination of these cases shows that mailing may be proved by a proper set of circumstances. Ross produced no witnesses, offered no exhibits, and did not himself take the witness stand.

Reversed as to Count three. Affirmed as to all others.