UNITED STATES of America, Appellee,

v.

GOLDBLATT, Lynn David, Appellant.

No. 86–1360.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Dec. 2, 1986.

Decided March 11, 1987.

---

Gregory T. Magarity, Brian P. Flaherty, Wolff, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for appellant.

Edward S.B. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Richard L. Scheff, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and FISHER, Judge.*

**OPINION OF THE COURT**

CLARKSON S. FISHER, District Judge.

Appellant, Lynn David Goldblatt, appeals from a final judgment and order of the United States District Court for the Eastern District of Pennsylvania, for violation of 18 U.S.C. §§ 1344 and 2113(b), bank fraud and bank larceny. Appellant presents three grounds for appeal. First, he alleges that the District Court erred in denying his motions for acquittal, made at the close of evidence and post trial. Second, he contends that the trial court's jury instructions on the elements of the crimes charged were inappropriate. Third, he asserts that the trial court committed reversible error by permitting the Assistant United States Attorney's instructions to the grand jury on the elements of the crimes to stand uncorrected.

On November 5, 1985, appellant, Lynn David Goldblatt, was arrested at his home for Social Security and Welfare fraud. Appellant's son, Lynn, Jr., entered his father's house shortly thereafter and obtained appellant's wallet, which contained two automated-teller machine (ATM) cards and user codes (personal identification numbers or "PIN's") for an account maintained by appellant at the Philadelphia Saving Fund Society (PSFS). The ATM cards were in the name of appellant and his mother, Ann Heinbock.

Between November 5 and 9, 1985, appellant's son used the ATM cards to withdraw $1,515 from appellant's account. Appellant was released on bail on November 5, 1985. On November 8, 1985, at approximately 10:50 P.M., appellant called the PSFS hotline to report the theft of his cards; the bank accordingly placed a hold on the account as of November 12, 1985. Appellant completed an "Assertion of Error Statement" on November 12, 1985, as required by PSFS in accordance with the Electronic Fund Transfer Act (15 U.S.C. §§ 1693–

1693r). On November 15, 1985, an ATM automatically seized one of the two ATM cards when appellant's son attempted to use it.

On November, 22, 1985, ten days after the Statement was filed, PSFS sent appellant a letter asking him to contact the bank regarding his claim. An interview was then scheduled at the bank for November 29, 1985. At this interview appellant was shown six photographs of a young male engaging in transactions at the machine, but claimed he could not identify the person. He continually requested access to his funds, but his requests were denied. He was informed, however, that if he signed an affidavit stating that the withdrawals were not made with his permission and he would assist in the criminal prosecution of the person who made unauthorized use of the funds, he would be granted access to his funds. Appellant signed the affidavit and subsequently had access to $1,415.00 of his account.[1] After he reported the loss to the police, he was able to withdraw $900.00 from his account on December 3, 1985. After receiving notification that his son had in fact used the cards, however, PSFS seized the remainder of appellant's account.

**I.**

Goldblatt now argues that the district court improperly denied his motions for acquittal because the provisions of the Electronic Fund Transfer Act entitle him to the money deposited in his account, notwithstanding his own conduct.

In reviewing a denial of a motion for acquittal, this Court must review the sufficiency of the Government's evidence. "[T]he district court must determine whether the Government has adduced sufficient evidence respecting each element of the offense charged to permit jury consideration." *United States v. Giampa*, 758 F.2d 928, 934 (3d Cir.1985); *Government of the*

---

* Honorable Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation.

1. $100 was charged against his account pursuant to the Act and regulations that hold a depositor liable for $50 for each card when there is an unauthorized withdrawal.

*Virgin Islands v. Williams,* 739 F.2d 936, 940 (3d Cir.1984).

In essence, Appellant argues that he was entitled to the money withdrawn by his son by virtue of Section 902 of the Electronic Funds Transfer Act. This section states in pertinent part:

(a) The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to the unique charactertistics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined.

(b) It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

Title 15 U.S.C. § 1693.

■ Goldblatt contends that at the time he withdraw $900.00 from his account on December 3, 1985, he was the owner of the funds and was entitled to them unless it could be shown that the withdrawals made by Lynn, Jr. had been "authorized" by him within the meaning of the Electronic Fund Transfer Act (the "Act"). The Court finds this argument without merit. According to Lynn, Jr., his father had advised him in October, 1985, that if he, Lynn David Goldblatt, was arrested, Lynn, Jr. should take Goldblatt's credit cards and ATM cards and begin to remove money from the appellant's bank accounts in $200.00 increments (App. 234a, 235a–237a). Lynn, Jr. then changed his story and stated that he simply had stolen the cards from his father (App. 234a–237a, 240a). As appellee contends, even if appellant's argument can be interpreted as challenging the sufficiency of the evidence with regard to the intent element of the offense, appellant Goldblatt still is not entitled to relief because he obtained the money from PSFS under false pretenses. The money was in the care, custody, and control of PSFS during this time.

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100.00 belonging to, or in the care, custody, control, management, or possession of any bank ... or any savings and loan association, shall be [guilty of an offense against the United States].

Title 18 U.S.C. § 2113(b).

Appellee argues that there is evidence sufficient to enable a jury to find that appellant lied when he failed to identify his son in the photographs shown to him by PSFS employees. Appellant contends, however, that any such deception cannot sustain a verdict of guilty unless his son's use of the card was authorized, because in the case of unauthorized use of the card the funds actually belong to appellant Goldblatt.

Appellee argues that the fraud theory supporting Count One of the Superseding Indictment did not rely on whether the withdrawals were authorized, but relied instead on the loss to PSFS resulting from appellant's conduct. PSFS claims that it was led to believe that the so-called "perpetrator of the unauthorized transactions" could not be identified. The Government cites *United States v. Williams,* 728 F.2d 1402, 1405 (11th Cir.1984); *United States v. Melton,* 689 F.2d 679, 684 (7th Cir.1982); and *Freeman v. United States,* 20 F.2d 748, 749 (3d Cir.1927) to support its contention that appellant Goldblatt must have known that failure to identify his son would result in a loss to PSFS. It can be inferred, therefore, that he engaged in a scheme to defraud PSFS through his false statements. Such a scheme to defraud the bank does not necessarily contemplate a result which benefits the appellant.

The evidence presented establishes that the bank had control and possession at the time of the transactions. The district court properly denied appellant's motions for judgment of acquittal.

## II.

Next, appellant contends that the district court erred in instructing the jury on the

elements of the crimes with which appellant was charged and the applicability and meaning of the Electronic Fund Transfer Act.

■■■ An appellate court's function when reviewing jury instructions is to examine the entire charge to ascertain whether the district judge performed his duties properly. *United States v. Garrett,* 574 F.2d 778, 781–82 (3d Cir.1978), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978). It is well settled that a single jury instruction may not be evaluated in artificial isolation; rather, it must be evaluated in the context of the overall charge. *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), *citing Boyd v. United States,* 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926). A trial which culminates in a judgment of conviction is the combined result of witnesses' testimony, counsels' arguments, entry of exhibits into evidence and the judge's instructions to the jury. Thus, "the process of instruction itself is but one of several components of the trial which may result in a judgment of conviction." *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400 (1973). A district judge provides the jury with guidance, to enable it to draw the appropriate conclusions from the testimony. *United States v. Garrett,* 574 F.2d at 782. This duty is satisfied by a clear articulation of the relevant legal criteria. *Id.; see also Bollenbach v. United States,* 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946). It is, however, within the sound discretion of the trial judge to determine the particular language to be employed when charging the jury. *See United States v. Bailey,* 451 F.2d 181, 183–84 (3d Cir.1971); *Government of the Virgin Islands v. Rivera,* 439 F.2d 1126 (3d Cir.1971).

Goldblatt takes issue with two aspects of the jury instructions. First, he charges that the judge's instructions to the jury on the elements of the crimes were erroneous. Appellant was indicted on one count of bank fraud and one count of bank larceny. Before the trial commenced counsel for appellant submitted requests to charge. Appendix at 79a–91a. In essence, appellant asked that the court instruct the jury that defendant could not be found guilty of either bank fraud or bank larceny unless it found him guilty of both. That is, the jury would have to find that appellant authorized his son to use the cards in addition to knowingly submitting a false claim in an attempt to have the bank recredit his account. Brief for Appellant at 23. If the jury found unauthorized card use, appellant maintained that the Electronic Fund Transfer Act entitled him to the funds, notwithstanding his failure to identify the photograph of his son. *Id.* In other words, appellant alleges that he was convicted of stealing his own money. We disagree.

■■■ The trial court properly informed the jury that the Government bears the burden of establishing each element of the offenses by proof beyond a reasonable doubt. Appendix at 271a. Specifically, the district court judge instructed the jury that the essential elements of bank fraud consist of: (1) a scheme or artifice to defraud a federally insured financial institution of money, (2) the defendant's participation in the scheme by means of false pretenses, representations and promises which were material, and (3) that the defendant acted knowingly. Appendix at 273a. The jury was further instructed that the scheme need not be fraudulent on its face, but must have involved some sort of fraudulent misrepresentation. Appendix at 274a. The trial court instructed that fraudulent misrepresentation is a statement or representation known to be untrue or made with reckless indifference as to its truth or falsity, a statement made with intent to deceive. The judge established that a false or fraudulent misrepresentation may be, *inter alia,* a statement of lies or a concealment of material facts. Appendix at 274a. The judge added that in this case a misrepresentation would be "material" if it went to the heart of the refund transaction. Appendix at 275a.

The instructions given properly directed the jury's attention to the loss suffered by the bank. Appellant was charged with

bank fraud in violation of 18 U.S.C. § 1344. This section states in pertinent part that

> (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
>   (1) to defraud a federally chartered or insured financial institution; or
>
>   (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, [shall be guilty of an offense against the United States].

According to this statute, this defendant can be convicted of bank fraud if the Government proves beyond a reasonable doubt that the defendant knowingly (1) engaged in a scheme to defraud a federally insured financial institution, or (2) participated in a scheme to obtain money under custody or control of the financial institution by means of false statements or representations.[2] A comparison of the judge's instructions with the elements of the crime reveals that the jury was properly instructed.

■ A reasonable jury could have found that appellant knowingly concealed the fact that the man in the photographs was his son. The failure to identify was a concealment of a material fact. *United States v. Martino*, 648 F.2d 367, 393 (5th Cir.1981). The misrepresentation went to the heart of the refund transaction. As a result of appellant's deliberate false misstatement, his account was recredited and he was able to withdraw money. In turn, not only was PSFS prevented from identifying the "unauthorized" user, but, in addition, it incurred a loss in the amount of the unauthorized withdrawals. Thus, a jury could have found that appellant engaged in a "scheme" and "artifice" as contemplated by the bank fraud statute. The terms "scheme" and "artifice" are defined to include any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive

others in order to obtain something of value, such as money, from the institution to be deceived. *United States v. Toney*, 598 F.2d 1349, 1357 n. 12 (5th Cir.1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1983).

■ The term "scheme to defraud," however, is not capable of precise definition. Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community. The bank fraud statute condemns schemes designed to deceive in order to obtain something of value. *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir.1978); *see also McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1508 (D.N.J.1985). Further, each individual component of the scheme need not be illegal in order to find a scheme to defraud. It is sufficient that the whole scheme involve fraudulent conduct. *United States v. Feldman*, 711 F.2d 758, 764 (7th Cir.1983), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983). Appellant strongly urges that the issue of authorization is the key to a proper determination of the bank fraud issue. We reject this contention. The Government was not required to show that PSFS incurred a loss in order to prove a scheme to defraud, *United States v. Bryza*, 522 F.2d 414, 421 (7th Cir.1976); *United States v. Kelly*, 507 F.Supp. 495, 501 (E.D.Pa.1981), even though it did demonstrate such a loss. Likewise, it was not necessary for the Government to prove that the intended victim of the fraud was actually defrauded. *United States v. Hopkins*, 716 F.2d 739, 746 n. 10 (10th Cir.1982). Further, it was not necessary for the Government to demonstrate that appellant personally benefited from his scheme. *United States v. Williams*, 728 F.2d 1402, 1405 (11th Cir. 1984); *United States v. George*, 477 F.2d 508 (7th Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973); *Freeman v. United States*, 20 F.2d 748, 749 (3d Cir.

---

**2.** *See United States v. Rafsky*, 803 F.2d 105 (3d Cir.1986), to compare these elements with the elements to be proven under the Wire Fraud Act, 18 U.S.C. § 1343.

1927). A jury could have found from the Government's evidence that: (1) PSFS is a federally insured institution; (2) appellant's misrepresentations to PSFS amounted to a scheme perpetrated by means of false pretenses which resulted in a loss to the bank; and (3) appellant acted knowingly. Inasmuch as the Government sustained the burden of proof and, most importantly, that the jury was properly instructed, we find no reason to disturb appellant's bank fraud conviction.

With regard to the charge of bank larceny, 18 U.S.C. § 2113(b) states:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank ... or any savings and loan association, shall be [guilty of an offense against the United States].

The essential elements of the bank larceny statute are that: (1) appellant took and carried away from the bank money, property or any other thing of value, (2) the money, property, or thing of value was of a value exceeding $100 and such was in the care, custody and control of the bank, and (3) the defendant intended to steal or purloin the money, property or thing of value. We find that the trial judge properly instructed the jury on this count. Appendix at 280a–282a.

■ Once again appellant urges that we focus our attention on the question of authorization, and again we find that the issue of authorization is irrelevant to the issue of appellant's culpability. Title 18 U.S.C. § 2113(b) prohibits a broader range of conduct than common law larceny, including "taking with intent to deprive the owner of permanent use of the property taken." *United States v. Hinton,* 703 F.2d 672, 674 (2d Cir.1983), *cert. denied,* 462 U.S. 1121, 103 S.Ct. 3091, 77 L.Ed.2d 1351 (1983). The taking and carrying, therefore, can be accomplished simply by withdrawing funds from a bank pursuant to a scheme to defraud. *United States v. Simmons,* 679 F.2d 1042, 1049 (3d Cir.1982), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3117,

77 L.Ed.2d 1370 (1983). The use of force, violence or intimidation is not a prerequisite to the element of the offense. *Brunjes v. United States,* 329 F.2d 339, 341 (7th Cir.1964), *cert. denied,* 377 U.S. 983, 84 S.Ct. 1892, 12 L.Ed.2d 751 (1965). Accordingly, when appellant withdrew the funds from the bank, the first element of the offense was satisfied.

Secondly, there can be no dispute that the money was in the care, custody, control and possession of PSFS. The amount withdrawn by appellant exceeded $100. As discussed above, appellant obtained the funds from PSFS through false pretenses. It has been established that his failure to identify his son was a material representation that went to the heart of the refund transaction, and 18 U.S.C. § 2113(b) encompasses taking money by false pretenses. *Bell v. United States,* 462 U.S. 356, 361, 103 S.Ct. 2398, 2401, 76 L.Ed.2d 638 (1983); *United States v. Johnson,* 706 F.2d 143, 144 (5th Cir.1983), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3548, 77 L.Ed.2d 1395 (1983); *United States v. Simmons,* 679 F.2d at 1048. Thus the second element of the bank larceny charge is satisfied.

■ The third element of larceny also has been established. A person who steals money belonging to a bank has committed the offense of taking with intent to steal money in a bank's custody, even if he had not formed an intent to steal before he entered the bank. *Brunjes v. United States,* 329 F.2d at 341; *see also United States v. Brown,* 547 F.2d 36, 39 (3d Cir. 1976), *cert. denied, sub nom. Redding v. United States,* 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977). A reasonable jury could have inferred that appellant knew or should have known that his deliberate misrepresentations caused PSFS a loss. The intent element is satisfied.

Now we turn to the second part of appellant's contention, namely, that the district court erred in instructing the jury as to the applicability and meaning of the Electronic Fund Transfer Act (Act), 15 U.S.C. § 1693–1693r. The Act is essentially a consumer protection statute, 15 U.S.C. § 1693(a). It is designed to minimize customer loss due to unauthorized account withdrawals. *See* 15 U.S.C. § 1693g. The Act places the

burden of proof upon the bank to determine whether the electronic fund transfer was authorized. *See* § 1693g(b). The Government established beyond a reasonable doubt that appellant had authorized his son to use the cards. Further, the judge instructed the jury properly in regard to the applicability and meaning of the Act. Appendix at 278a–279a. We find, therefore, no error in these instructions.

### III.

Appellant contends that the District Court erred in denying his motion to dismiss the indictment because the Assistant United States Attorney, in the course of grand jury proceedings, improperly instructed the jury as to the applicable law concerning the crimes with which appellant was charged. Appellant's allegations of prosecutorial misconduct are based upon his belief that the issue of authorization was central to conviction of either bank fraud or bank larceny. As we have already established that appellant's position on this issue is incorrect, we find the contention is without merit. The prosecutor did not engage in any misconduct when he instructed the grand jury with regard to the authorization issue.

### IV.

The judgment of the district court will be affirmed.